UNITED STATES v. BACHMAN et al.

(District Court, E. D. Pennsylvania. December 5, 1917.)

No. 42.

1. CRIMINAL LAW ⟪872—TRIAL—STIPULATIONS.
   Where the case was submitted to the jury at the close of the session, and counsel stipulated that the clerk might take the verdict when rendered as if the court were in session, the agreement is binding, and questions as to the validity of the verdict must be decided as if the judge had been present and the court in actual formal session.

2. CRIMINAL LAW ⟪881(3)—TRIAL—VERDICT—CERTAINTY.
   A verdict in a criminal case must be certain in legal intendment; there being a distinction between a legal certainty and moral certainty as to what the jury in fact intended.

3. CRIMINAL LAW ⟪878(2)—TRIAL—VERDICT—SUFFICIENCY—"ALL."—"BOTH."
   Two defendants were charged with using the mails in connection with a scheme to defraud, and, while the indictment contained several counts, the court, in its charge dealing with the substance of the offenses, and

not the form of the indictment, stated that the charges against the defendants were in substance two. The parties having stipulated that the clerk might receive the verdict in the absence of the judge, the request of the jury for the indictment, which had not been sent out with the charge, was denied. The verdict found defendants guilty as indicted on "both" counts. *Held* that, as the word "both" is peculiarly appropriate to express the thought of all of two, and the word "all" indicates every one of a class, etc., though it be limited to only two, the verdict is sufficient to support a judgment indicating that the jury found defendants guilty on all of the counts; the jury having used the word "both" in the mistaken assumption that there were only two counts (citing Words and Phrases).

4. POST OFFICE ⬅═35—OFFENSES—USE OF MAILS TO DEFRAUD.

　　Practices may be indulged in which can be characterized as fraudulent, yet do not fall within the statutes denouncing the offense of using the mails in connection with a scheme to defraud; that offense requiring that the scheme be fraudulent in its inception.

Clawson Bachman and Joseph T. Hayden were indicted for using the mails in connection with a scheme to defraud. There was a verdict of conviction. Sur defendants' motions in arrest and for new trial. Motions denied.

Ernest Harvey and R. J. Sterrett, Asst. U. S. Attys., and Francis Fisher Kane, U. S. Atty., all of Philadelphia, Pa.

J. Washington Logue, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. [1, 2] The motion in arrest of judgment calls for a word of explanation. The case was submitted to the jury at the close of the session of the court. It was anticipated the court might not be in session when the jury were ready to return their verdict. It was in consequence of this agreed that the clerk might take the verdict, when rendered, as if the court were in session and a verdict were given in open court, with the trial judge present. The verdict was so rendered, and as a further consequence no instructions were given to the jury, but the verdict was taken under the circumstances set forth in the notes of trial. It may be further stated as a fact not disclosed by the record that the indictment had not been sent out with the jury, and that the jury, before rendering their verdict, had asked for the indictment, a request which had been denied.

Attention should be called to the further fact, which does appear in the charge of the court, that the jury had been advised that the charges made against the defendants in substance, although not in form, were two. This statement is made in explanation of how it happened that the question raised by the defendants on this motion has arisen. Had the trial judge been present, the request of the jury to have the indictment would probably have been granted, and it is further probable that, had the jury had the indictment, they would have discovered that there were four or six counts (or whatever the actual number is) which the indictment contained, and that their verdict would have been in strict conformity with the charges, or the trial judge would have refused to have accepted the verdict in the form in which it was rendered, but would have instructed them as to the form

of the verdict which they should render. Counsel, of course, whatever the consequences, stand by the agreement made, and the questions which arise are to be decided as if the trial judge had been present and the court in actual formal session. It is, of course, recognized that the verdict must be certain in legal intendment, and that there is a distinction between this legal certainty and a moral certainty as to what the jury in fact intended. In passing upon the former, however, it may be helpful to gather the latter.

[3] We think there is no doubt in fact of what the jury meant. The members of the jury were men of a high intelligence. They understood from the charge of the court that the charges against the defendants were in substance two; but they understood, further, that the court was dealing in the charge with the substance of the offenses, and not with the form of the indictment, and that the charges against the defendants, although in substance two, might have been formally stated in the indictment under a larger number of counts. To clear this up they asked for the indictment, and, not getting it, they framed their verdict in the light of such information as they had. It follows, from this, that the jury to a moral certainty intended to acquit one of the defendants of all the charges made against him, because they understood (and correctly) they had been so instructed by the court. They further intended to find the other defendants guilty of all the charges against them.

The English language provides us with few words of distribution applicable to the subject-matter with which the jury were dealing. In common speech, they are limited to two. These are the word "both" and the word "all." The word "both" is without doubt peculiarly, appropriately, and accurately applicable in expressing the thought of all of two. The word intended to embrace every member of a class, where the number of the members of the class exceeds two, is the word "all." Each word, however, embraces every member of the class to which it is applied. If the word "all" is used as applied to a class, the number of whose members is limited to two, the only conclusions which can be reached are that the user of the word has made use of the wrong word "all" in place of the right word "both," or that he thought there were more than two members of the class of which he was speaking. There could be no doubt that he meant to include every member of the class. The same comment can be made on the use of the word "both," when the appropriate word is "all." In neither case would there be any ambiguity of meaning conveyed. There is certainty to a legal intent in the thought expressed.

Words and Phrases gives us illustrations of this misuse of words, and the reading given to statutes affords many more. The certainty of the meaning of the verdict rendered in this case, both in its moral and legal aspects, is fortified by the expressions in the verdict as rendered. The jury first declared the defendants to be "guilty as indicted," and then added the words "on both counts." In reaching the conclusion indicated, we are not unmindful of the thought expressed with ability and force and advanced with a certain degree of plausibility by counsel for the defendants. We recognize that to the lay mind, however in-

telligent and well informed, there would be a difference among the several victims of the fraud with which the defendants were charged, and it would be more than possible that a jury might be ready to find fraud in the transactions with some of the persons with whom the defendants dealt, and might not be ready to find fraud in the business transactions had with others. Had the thought of making any such distinction been in the mind of the jury, there is a moral certainty that they would have used the word "two," or a like numeral word, instead of the word "both," and there is nothing in the thought advanced by counsel for defendants to weaken the legal certainty that no such distinction among the counts was intended.

The conclusion reached is in accord with the cases to which we have been referred, among which are Commonwealth v. Huston, 46 Pa. Super. Ct. 172; Klouser v. Patterson, 122 Pa. 372, 15 Atl. 444; Commonwealth v. Nicely, 130 Pa. 268, 18 Atl. 737.

The motion in arrest of judgment is denied.

[4] Respecting the motion for a new trial, there is this to be said. Practices may be indulged in or resort may be had to them by defendants which may be characterized as fraudulent and found to be such, and yet there may not be fraud within the meaning of the acts of Congress protecting the integrity of the mails. As rank illustrations of the distinction, a fraudulent scheme may be concocted, and the mails used to carry it out, to rope in intending investors by selling them certificates of stock which have no other existence than such as is due to the art and skill of the printer. Men, on the other hand, may conceive the project of raising money through the sale of the stock of a company to be used in the development of a real business project. In the course of the attempt to accomplish their purpose they may get into a cramped financial condition, and to extricate themselves they make false and fraudulent representation to particular investors. The loss to the investors, or would-be investors, may be the same, and yet one must recognize the substantial difference in the two cases. The one is a scheme to defraud. In the other frauds have been perpetrated to prop up a failing enterprise not fraudulent in itself. The distinction thus attempted to be expressed is one which the lay mind might refuse to recognize, but it nevertheless has a real existence.

Counsel for the defendants, with great force and ability, attempted to impress upon the jury the real and vital difference between business projects which end and result in loss and disaster to the investors, and schemes which were intended to defraud their victims. In the presentation of this defense, counsel were assisted by the trial judge, and the attempt was made, and we think with success, to have the jury observe this vital distinction, and to have them determine to which class the defendants belong. We feel that the jury intelligently and conscientiously discharged its duty, and that the verdict reflects the conviction of every one of the 12 men that the defendants were guilty of devising a scheme to defraud and of using the mails of the United States in its promotion.

With this finding we cannot interfere without usurping the functions of the jury. If, of course, the trial judge is convinced that a convic-

tion is unjust, or even that a defendant has not been given the benefit of the reasonable doubt, to the benefit of which he is legally entitled, sanction cannot be given to the verdict by entering judgment upon it; but we cannot do otherwise than find that the verdict rendered was well within the lawful power of a jury to render.

The motion for a new trial is therefore also dismissed.