**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gordon L. PLATT, Defendant-Appellant.
No. 17943.**

United States Court of Appeals,
Seventh Circuit.

Dec. 15, 1970.

Brent A. Barnhart, Kenneth Kern & Associates, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William W. Knowles, William Andrew Kerr, S. D.Ind., Asst. U. S. Attys., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and PELL, Circuit Judge.

KNOCH, Senior Circuit Judge.

Defendant-Appellant, Gordon L. Platt, was indicted in twenty-one counts, all charging violations of Title 18, U.S.C. § 1341.[1]

---

1. § 1341. Frauds and swindles
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure

As set out in the indictment, the proposed victims of the scheme to defraud allegedly devised by Defendant-Appellant (and others also indicted with him, with whom we are not here concerned) were holders of distressed property who would be induced to trust in the financial advice of Appellant and prospective tenants who would be induced to rent, and improve property, in reliance on representations by Appellant who concealed the fact that they were paying rent for, and making improvements to, distressed property from which they could be evicted at any time. The scheme was set out in full in Count I, which also alleged use of the mails in furthering the execution of the scheme. The remaining counts realleged the scheme and set out other uses of the mails in furthering its execution.

On Appellant's motion based on local prejudice arising from adverse newspaper publicity, trial was held in New Albany, Indiana.

Just prior to presentation of its case, the government moved to dismiss fourteen of the twenty-one counts. This motion was sustained. The trial of the remaining seven counts took a full week. The jury rendered a verdict of guilty on all seven counts. Appellant was sentenced to serve a maximum of five years in the Federal Penitentiary on each count, the sentences to be served concurrently.

Briefly summarized, the evidence at the trial disclosed the following. Appellant's secretary would mail a letter, offering Appellant's assistance in refinancing their property, to owners of distressed property whose names she obtained by checking mortgage foreclosures listed in the local legal newspaper. Defendant also visited the homes of owners of distressed property to offer his assistance in refinancing. Witnesses testified that, as requested by Appellant, they paid him monthly the amount they had been paying on their mortgages, but that he made no effort to secure refinancing and their redemption periods elapsed without accomplishment of refinancing. Witnesses also testified that Appellant would induce persons to become purchasers of real property under the guise of merely renting it to them. Witnesses testified further that Appellant misrepresented to the owners of distressed property that selling their property to him would leave them free and clear of all obligations including the risk of a deficiency judgment, and further that Appellant on acquiring such property by quitclaim deed, would rent it to tenants who would make improvements in lieu of rent, without informing those tenants that they were subject to eviction at any moment.

Appellant presented a witness who testified to the difficulty of securing refinancing for distressed property owners and the legitimacy of fees for real estate brokers who added their own credit to that of the distressed property owners to secure refinancing. Another witness testified that he had been so aided by Appellant and had secured refinancing for his property.

It is conceded that a motion for continuance is addressed to the sound discretion of the Trial Judge, but the Appellant argues that there was an abuse of discretion in denying his motion for continuance after dismissal of the fourteen counts. A great volume of detail

for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 763; May 24, 1949, c. 139, § 34, 63 Stat. 94.

and many documents were involved in the various dealings listed in the indictment. Appellant's counsel expressed surprise when the government's motion to drop the fourteen counts was allowed, although there was no objection as simplification of the case had been sought earlier. Notice of the motion to dismiss these counts had been sent to the defense counsel's office in Indianapolis. The trial, as indicated, was being conducted in New Albany as a consequence of the Appellant's motion to move the trial from Indianapolis. Both of the defense attorneys stated that they had not actually seen the motion before reaching the courthouse the morning of the trial.

The District Judge did not believe that dropping counts could be prejudicial in any way by complicating or confusing the defense, defense counsel having stated that they had sought to dismiss some counts earlier but had been unsuccessful. The Trial Judge noted that the present government counsel had come into the case only very recently. The motion to continue the trial based on a need to consolidate past efforts respecting all twenty-one counts, and to separate files, papers and documents, was denied.

Appellant contends that refusal of a continuance at this point denied him his Sixth Amendment right to effective assistance of counsel. In support of the claim that his defense counsel (who are not the Appellant's counsel on appeal) were put at a disadvantage by the dropping of the counts, Appellant refers to the Court's adverse comments on the slow pace of the trial, critical of the delays between questions put to the witnesses. The transcript shows that these comments were addressed to counsel on

both sides and only during presentation of the prosecution's case.

As the District Judge said, obviously the defense would not be putting on evidence for several days and considering the experience of defense counsel, the Court thought that the defense case might be reorganized by throwing out two-thirds of the evidence with virtually no problem at all.

We see no abuse of discretion in the Trial Judge's ruling on the motion for continuance.

Appellant argues that it was "plain error" for the Trial Judge to give no instruction regarding the distinction between actual and "constructive" fraud.

At the trial, defense counsel tendered their instruction No. 9 which was refused.[2] Appellant's present counsel indicate some dissatisfaction with the instruction but assert that some instruction should have been given that for a finding of fraud there must have existed an overall scheme to defraud and that mere fraud in the course of a legitimate enterprise could only support a finding of constructive fraud.

The District Judge read from the pertinent section of the United States Code and defined "false" and "fraudulent" with respect to statements or misrepresentations, "scheme to defraud" and "good faith".

■ Appellant now asserts that the jury should have been instructed further that there is a distinction between a scheme to defraud and a fraud perpetrated in the course of an enterprise not in itself fraudulent. A typical example (as set out in United States v. Bachman, D. E.D.Pa.1917, 246 F. 1009, 1012, one of

2. DEFENDANT'S INSTRUCTION NO. 9

You are instructed that "in order to prove a scheme to defraud under the mail fraud statute there must be proof of a scheme embracing active or actual fraud, and proof of a mere constructive fraud is insufficient. Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accom-

plishes the end designed. It requires intent to deceive or defraud".

"Constructive fraud is a breach of legal or equitable duty which, in spite of the fact that there is no moral guilt resulting from the breach of duty, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests".

Mere constructive fraud will not sustain a conviction in this case.

the cases on which Appellant relies) would be sale of stock in a company used in the development of a real business project, where the entrepreneur found himself in a cramped financial condition and sought to extricate himself by false representations to particular investors. The government concedes that such a distinction may be made but points out that the proffered instruction did not cover this point. Nor was objection to lack of instruction on this point made at the trial. We do not consider failure to instruct on this point to be plain error, nor do we agree that Appellant was prejudiced. The jury was instructed on the element of a "scheme to defraud" and even the summation of the prosecution stressed proof of such a scheme to defraud as an essential element of the case.

Appellant was allowed to introduce evidence of his proper dealings with certain persons in order to show that he was engaged in a legitimate business.

Appellant sees as error the admission of the evidence of Fred McDonald, who testified that he received a long distance telephone call in Nova Scotia in July 1967 from a man who gave the name of "Gordon L. Platt". The witness had never met Appellant and could not identify the caller's voice. However one of the exhibits at the trial was a pink sheet carbon copy of a message dated July 18, 1967 on a printed form which appears to be part of a set of forms. The witness stated that after the call he had received what he remembered as a white sheet of paper bearing the same message. The exhibit purported to be from Gordon L. Platt. It was addressed to Mr. and Mrs. Fred Allen McDonald at an address in Nova Scotia. It read:

> Please find enclosed release by quit claim deed and our check for $10.00 as consideration for the release. Please sign the quit claim deed and return in the self addressed envelope we have provided.

Mr. McDonald testified that he signed the quitclaim deed and returned it to the address on the message.

The government also presented a witness who testified that he had rented from Appellant's realty firm the property covered by the quitclaim deed which Mr. McDonald had received, signed and returned to Appellant.

Mr. McDonald was allowed to testify to the content of the telephone call, which he said concerned his signing a deed for some property he owned (which was the subject of the quitclaim deed subsequently sent him) so that the property, he was told, could be sold or rented. He said he was also told by the caller that the property would be off his "record as far as owing any money to American Fletcher Bank" (to whom he had been sending his mortgage payments) and that his "note would be clean with American Fletcher Bank." The caller had identified himself as Gordon Platt from American Fletcher National Bank mortgage department, in Indianapolis. The $10.00, he was told, was for clothing found in the attic which had been given to the Goodwill organization.

The jury was promptly instructed that the testimony of Mr. McDonald was admitted solely with reference to the element of motive or intent. The Trial Judge repeated this admonition in his instructions to the jury at the close of the trial.

We find no error in admission of this evidence. See Andrews v. United States, 10 Cir., 1935, 78 F.2d 274, 275; Spindler v. United States, 9 Cir., 1964, 336 F. 2d 678, 681, cert. den. sub nom. Richards v. United States, 380 U.S. 909, 85 S.Ct. 894, 13 L.Ed.2d 797, where testimony of telephone conversations was admitted although connection between the conversation and the caller was established by circumstantial evidence alone.

Appellant's last point is that it was "plain error" for the Trial Judge to allow a verdict of guilty to stand as to Count 12, which concerned the furtherance of the alleged scheme to defraud by mailing a Motion to Intervene to an attorney proceeding with a mortgage foreclosure action. In this Court, Appellant

argues that admitting such an item in evidence constitutes unwarranted interference with an attorney's practice of the law. Here and at the trial, Appellant's counsel urged the tenuous relationship as a basis for excluding the evidence.

The witness who signed the Motion to Intervene in the pending foreclosure case testified that she signed it for herself and her husband at the instance of Appellant who told her that her husband had already approved it and that by signing both names, she would ensure that they would both be relieved of further responsibility to buy the house which they thought they had been occupying under a rental agreement. The motion stated that she and her husband were fee simple owners of the realty which was the subject of the pending foreclosure, that they had been in occupancy since acquiring quitclaim deed from the original defendants in the action, but had never been served with process.

The witness testified further than she did not understand she was intervening in a legal action until later and that the legal description was inserted in the motion after she signed it.

She also testified that she had originally understood the quitclaim deed mentioned in the motion to be a document in connection with her rental agreement and that when she learned that she and her husband had obligated themselves to purchase, she was anxious to escape the responsibility to buy.

The prosecution argued that the scheme to defraud was furthered by mailing this document to cause delay in the foreclosure proceedings, allow collection of perhaps another month's "rent" and keep the scheme going a little longer.

The attorney who was handling the foreclosure testified that in 5½ years of practice including between 125 to 154 foreclosures, this was the only Motion to Intervene as a defendant in a foreclosure proceeding which he had received, and that it might have forestalled foreclosure and possibly required beginning foreclosure proceedings anew by amending the complaint, but for the fact that he promptly filed a motion in opposition and was fortunate in securing a short date for hearing. He said he subpoenaed the movants and Appellant and that his motion to set aside the Motion to Intervene was sustained.

We find no error in the Trial Judge's ruling to admit into evidence the Motion to Intervene. Nor can we agree with Appellant that the evidence was insufficient to support a jury's finding of guilty as to Count 12.

After careful study of all the authorities to which our attention has been drawn and close consideration of the arguments advanced on behalf of Appellant, we are satisfied that the judgment of the District Court must be affirmed.

Affirmed.