**Charles Wendell COFFEE, Plaintiff-Appellee,**

v.

**The PERMIAN CORPORATION et al., Defendants-Appellants.**

**No. 72–1814.**

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1973.

Certiorari Denied May 29, 1973.

See 93 S.Ct. 2736.

F. H. Pannill, W. B. Browder, Jr., Midland, Tex., for defendants-appellants.

Charles E. Galey, Lubbock, Tex., for plaintiff-appellee.

Gerald Huffaker, Tahoka, Tex., for Layman.

Before MORGAN, CLARK and IN-GRAHAM, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In this case Charles Wendell Coffee brought suit against the Permian Corporation and several of its directors alleging a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. 240.-10b–5. Coffee claimed that defendants, as majority stockholders, engaged in a scheme to defraud him of the value of his stock in the J. B. Knight Company, Inc., by liquidating Knight Company when its stock had a value of approximately $20.00 per share. A jury found in favor of Coffee and defendants appeal on the grounds that the evidence was insufficient to support a finding of fraudulent plan of liquidation; that the evidence was insufficient to support the jury's finding that some, but not all, of the defendants knowingly participated in the fraudulent scheme; that there was no proper proof of the value of plaintiff's stock at liquidation; and that the court erred in allowing judgment for exemplary damages. Having considered all these assignments of error, we affirm the judgment below.

### FACTS

On March 31, 1965, Coffee purchased 1,000 shares of stock in the J. B. Knight Company which was at that time principally owned by Mr. J. B. Knight and

members of his immediate family. Shortly thereafter, Permian Corporation completed an agreement with Knight Company whereby Permian purchased 50% of Knight Company stock and agreed to furnish Knight Company with the necessary capital to finance the building and selling of farm irrigation systems. The financing was accomplished through a wholly owned Permian subsidiary, the Cambrian Finance Company. After the agreement was signed several members of the board of directors at Permian also became members of the board at Knight Company and Cambrian.

Due to a number of factors, Knight Company began losing money in its farm irrigation business and it became necessary to secure additional operating funds in addition to those already being received from Cambrian. Actual loans and loan commitments, all of which were guaranted by Permian, were obtained from the Midland National Bank. In June of 1966, Cambrian decided to go out of business and as a result the company was dissolved and its paper discounted for a total loss of $55,000.00. At a special board of directors meeting this loss was shifted to Knight Company by causing Knight Company to execute a note to Permian for the amount of the loss. Coffee was never informed of this transaction.

In August of 1966, appellant W. R. Davis, as president and chief executive officer at Permian, forced Mr. J. B. Knight to resign as president of the Knight Company by threatening to send Knight Company into bankruptcy by calling in all the demand notes held by Permian. Davis and appellant C. R. Herpich, a board member at both Permian and Knight Company, selected A. L. Bennett as the new president of Knight Company.

In November of 1966, Permian merged into Occidental Petroleum Corporation and shortly thereafter, on december 27, 1966, the Knight family sold its stock back to the Knight Company and received a note in return. The Knight shares were then cancelled and Permian's ownership in Knight Company increased to 80.02%.

During the month of August 1967, several of the board members indicated a desire to liquidate the Knight Company. At that point the company showed a profit of over $50,000.00 for the first seven months of 1967, and the financial statement listed the indebtedness to Permian and Midland National Bank as long-term liabilities. The balance sheet reflected a shareholder's equity of $1,116,055.00. None of the above information was ever disclosed to Coffee. However, the financial statement of September 30, 1967, was presented to Coffee and this statement noted the indebtedness to Permian as a current liability. Shifting the indebtedness from a long-term to a current liability resulted, of course, in a drastic reduction in the amount of working capital reflected on the financial statement.

Knight Company called a meeting of its creditors, and on October 23, 1967, the directors showed the creditors the September 30th financial statement as evidence of the company's financial condition. Subsequently, and without allowing the shareholders to vote as required by Texas law,[1] Knight Company was liquidated. At some time during the liquidation process Permian purchased outstanding Knight Company accounts totaling $628,993.00 at a discount, paying only $390,230.05 for these accounts. In the meantime, the Knight family was paid less than 50% of the face value of its note which was executed when the family's stock was sold back to the Knight Company. Permian's parent company, Occidental, received a $115,000.00 tax benefit as a result of the Knight Company liquidation.

Plaintiff Coffee filed suit in federal district court on July 7, 1969, claiming that Permian Corporation and certain of its directors had engaged in a scheme to

---

1. Art. 5.10, Tex.Bus.Corp.Act, V.A.T.S.

defraud him of the value of his stock in violation of the federal securities laws and the Texas statutes [2] dealing with the rights of minority shareholders. Initially, the district court dismissed the complaint on the ground that plaintiff did not allege facts sufficient to demonstrate that he was a purchaser or seller of securities within the ambit of § 10(b)(5), supra. This court reversed, however, and held that plaintiff's complaint alleging the liquidation of Knight Company gave him standing as a seller of securities. Coffee v. Permian Corporation, 5 Cir. 1970, 434 F.2d 383. On remand a trial was had before a jury which found in favor of plaintiff by returning answers to several interrogatories which will be discussed later.

## I

Defendants' principal assignment of error is that there was insufficient evidence before the jury to support a finding that they engaged in a scheme to cheat Coffee out of the value of his stock. Proof of a scheme to defraud failed, defendants claim, because there was no evidence that either Permian or the individual defendants took over the Knight Company assets after liquidation or that the defendants ever received any sort of financial gain or profit as a result of the liquidation. In our view this argument would, if accepted as a principle of law by this court, lead to results completely contrary to the intent and spirit of the Securities and Exchange Act of 1934, supra. We would be holding in effect that, regardless of the amount of evidence revealing a scheme to defraud, the perpetrators of the scheme could not be made to reimburse a minority stockholder unless the manipulative plan was successful and carried to its completion after liquidation. The flaw in such a proposition is immediately apparent. The interest of the minority stockholder, which is protected by the Securities Exchange Act, is not at all affected by whether or not the fraudulent plan actually brings a profit to the defrauding shareholders after the corporation is wrongfully liquidated. If the plan to dissolve is fraudulent the damage to the minority stockholder occurs at liquidation, and Congress could not have intended the right of recovery to depend, as a matter of law, on what happens after that point. Assuming the majority stockholders devised a fraudulent plan and liquidated the corporation, there exist any number of reasons why they might choose not to follow through and take their intended profit after the minority shareholders have been deprived of the value of their stock. For example, the majority stockholders might suddenly fear discovery of the plan and legal prosecution; or changing market conditions could render the initial scheme unprofitable. But regardless of the reason, the defrauded stockholder has suffered a loss and it is clear that his right of recovery cannot be foreclosed by whatever action the perpetrators of the scheme do or do not take after liquidation. What we hold, then, is that while lack of *profit* is certainly an element for the trier of the fact to consider, the plaintiff stockholder's proof is not insufficient, as a matter of law, simply because there is an absence in the evidence of any gain on the part of the individuals who are charged with engaging in the scheme to defraud.

## II

Having established that plaintiff Coffee need not necessarily prove gain by the defrauding stockholders, the next question is whether the evidence presented at trial was sufficient to support the jury's verdict under the standards announced in Boeing Company v. Shipman, 5 Cir., En Banc, 1969, 411 F.2d 365. In that case this court set up the test to be applied in considering the sufficiency of the evidence:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of

2. Art. 5.11, Tex.Bus.Corp.Act.

the evidence—not just that evidence which supports the non-mover's case —but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses, 411 F.2d at 374, 375.

A review of the record on this appeal reveals ample, indeed overwhelming, evidence from which reasonable men might infer that the defendants engaged in a scheme to defraud Coffee of the value of his stock. Evidence was introduced which, taken in the light most favorable to the jury's verdict, revealed the following: The Knight Company stock had a value at liquidation of approximately $20.00; the defendants concealed pertinent information about the company's financial condition by changing certain debts from long-term to current liabilities; the liquidation was effected without the usual shareholders' vote and op-

portunity for dissent and appraisal which the defendants knew was required under Texas state law;[3] a loss incurred by a subsidiary controlled by defendants was secretly shifted to the Knight Company; the defendant Permian Corporation was at all pertinent times a major creditor of Knight Company and by the time of trial the only creditor; Permian Corporation purchased Knight Company debts at a discount; Permian's parent corporation, Occidental, received a tax benefit as a result of the Knight Company liquidation.

The jury obviously believed, and not unreasonably so, that at the time of liquidation the defendants in their dual capacity as creditors and majority shareholders planned to force the minority stockholders out of the corporation without paying them the value of their stock. Although this plan was not completed, the defendants brought about the liquidation for their own personal gain, and as majority stockholders they were under a fiduciary duty to act in the best interest of the minority shareholders.

Therefore, in light of the evidence presented at this trial, and applying the standards enunciated in Boeing Company v. Shipman, supra, it was within the province of the jury to reach a conclusion in favor of the plaintiff.

### III

Federal law is not clear concerning exemplary damages in 10b–5 lawsuits, but that need not trouble us here. By way of pendent justification a violation of state law is also present and it is well established that exemplary damages may be awarded if allowable under state law when a state law violation is joined with the 10b–5 complaint. Young v. Taylor, 10 Cir. 1972, 466 F.2d 1329. See also Herpich v. Wallace, 5 Cir. 1970, 430 F.2d 792.

After careful and thorough research there is no doubt that exemplary damages are allowed in Texas for a vio-

3. Arts. 5.10–5.13, Tex.Bus.Corp.Act.

lation of this type where the jury finds they should be awarded. Hughes v. Halliday, 471 S.W.2d 88 (Tex.Civ.App. 1971), Collins v. Miller, 443 S.W.2d 298 (Tex.Civ.App.1969), V.A.T.S. Bus. & C. § 27.01 (formerly Article 4004 V.A. T.S.). We note that in this case the district court charged the jury as to exemplary damages in terms of fraud, breach of fiduciary duty, and the elements which must be present under Texas law to justify these exemplary damages. We feel that there was ample evidence before the jury for it to find both a violation of state law and that exemplary damages were proper for such violation.

Appellant Permian raises various other suggestions of error and insufficiency. We have carefully reviewed the trial record and find these assertions without merit. Therefore, the opinion of the district court is

Affirmed.

CLARK, Circuit Judge (concurring in part and dissenting in part):

After the verdict in this case the judge who tried it observed that had he been the fact finder he would have reached a different result. My study of this record leaves me with the same impression. Therefore I cannot say that the evidence of fraud in this case in any way approached the "overwhelming" mark recorded by the majority opinion. Nevertheless, this study does convince me that the case was properly submitted to the jury to determine the basic issue of 10b–5 liability. I therefore concur in that portion of the result reached by the majority opinion which would affirm that action.

The majority held that ". . . majority stockholders . . . [have] a fiduciary duty to act in the best interest of the minority shareholders." Such a rule overstates my conception of this legal duty. While a majority shareholder's dealings with a corporation are subject to rigorous scrutiny for basic fairness, an inherently fair transaction should be upheld even though it not be in the best interest of the minority.

For example, a majority shareholder should not be precluded from collecting a valid debt which the corporation owes to him, though it obviously would be in the minority's best interest for him to forego collection.

I respectfully dissent from the award of exemplary damages. First, I do not believe that such an award can be upheld in this case as a pendent Texas law claim. The record shows that the jury was charged only in terms of a 10b–5 cause of action. Since that is the case that was presented, I would hold it was the only case decided. Second, my view on pendent jurisdiction indicates that I must reach the question the majority pretermits—does 10b–5 allow the award of exemplary damages? This dissent is an inappropriate place for extended reasoning. Suffice it to say that I would generally follow the reasoning of the Second and Tenth Circuits in concluding that this provision will not support such an award. *See* deHass v. Empire Petroleum Co., 435 F.2d 223 (10th Cir. 1970); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).