Charles Wendell COFFEE, Plaintiff-
Appellant,

v.

PERMIAN CORPORATION, W. R. Davis,
C. R. Herpick, A. L. Bennett, Earl Lay-
man and Walter K. Boyd, Jr., Defend-
ants-Appellees.

No. 29093.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1970.

Brock, Wright, Waters & Galey,
Charles E. Galey, Lubbock, Tex., for
plaintiff-appellant.

W. B. Browder, Jr., Rush Moody, Jr.,
Midland, Tex., Stubbeman, McRae, Sea-
ly, Laughlin & Browder, Midland, Tex.,
for defendants-appellees.

Before GEWIN, MORGAN and
ADAMS,* Circuit Judges.

ADAMS,* Circuit Judges.

In this case we are asked to decide
whether plaintiff has alleged facts suffi-
cient to demonstrate that he is a pur-
chaser or seller of securities under §
10(b) of the Securities Exchange Act of
1934, 15 U.S.C.A. § 78j(b), and Rule
10b-5 promulgated by the Securities and
Exchange Commission, 17 C.F.R. § 240.-
10b-5 (1949).

Coffee's complaint was based on viola-
tions of § 10(b) and Rule 10b-5, and it
alleged that Coffee had been defrauded
when the defendants communicated false
and misleading information, withheld
material facts, and practiced other de-
ceptive and manipulative schemes. The
Honorable Holbert O. Woodward, Judge
of the United States District Court for
the Northern District of Texas, granted
defendants' motion to dismiss the com-
plaint, 306 F.Supp. 1371, on the ground
that Coffee lacked standing to prosecute

* Of the Third Circuit, sitting by designation.

this action since his allegations were insufficient to demonstrate he was either a seller or a purchaser of securities within the meaning of § 10(b) and Rule 10b-5.

■ Because this is an appeal from an order dismissing the complaint for failure to state a claim upon which relief can be granted, we must accept Coffee's allegations as true. *See e.g.* Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172, 175, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), Kahan v. Rosenstiel, 424 F.2d 161, 164 (3rd Cir. 1970); 2 J. Moore Federal Practice § 12.08 (2d ed. 1966). The allegations pertinent to this appeal follow:

In March, 1965, Coffee became a minority shareholder in Knight Company by purchasing 1,000 of the 35,000 shares of Knight Company's then outstanding stock for $25,000. Later in 1965, 37,500 shares of Knight Company's stock were issued to the Permian Corporation, making Permian an owner of fifty percent of the outstanding shares of Knight Company. Permian's influence over the affairs of the Knight Company was increased by the provisions of a loan agreement completed later in 1965 between Permian and the Knight Company. Permian's representatives were added to the Knight Company's Board of Directors and Permian achieved substantial, if not complete, control of the Knight Company.

Permian, during 1966, was able by means of its dominance over the Board of Directors of Knight Company to shift a $50,000 loss from Permian to the Knight Company and to conceal this manipulation from Coffee. Later in 1966 Permian forced the Knight family to sell most of its stock "back to the Knight Company on credit", thereby increasing Permian's interest in the Knight Company to 80.2%. This permitted Permian to treat Knight Company as a subsidiary for federal income tax purposes. Permian obtained Coffee's consent to the redemption of the Knight family stock by concealing the fact that the Knight family was being forced to sell its stock.

In 1967 Permian decided to liquidate the Knight Company and to appropriate its assets solely for the benefit of Permian. This decision was made at a secret meeting of the Board of Directors of Knight Company and at a time when the Knight Company had a commitment from a "disinterested lender" to loan a substantial amount of money to the Knight Company for operating capital. The liquidation of the Knight Company has been substantially completed without a shareholders' meeting to ratify the actions of the Board of Directors. In order to prevent Coffee from objecting to its scheme, Permian suppressed certain favorable financial statements which revealed that the Knight Company had earned $69,683.00 in the first seven months of 1967. In lieu of the July financial statements, the defendants issued a financial statement in September, 1967 which was manipulated to indicate that the Knight Company had lost $144,502.-00 for the first three-quarters of 1967.

Coffee asserts he "sold", within the meaning of the Securities Exchange Act and Rule 10b-5, stock of the Knight Company when Knight Company liquidated its assets, because Coffee's shares of stock were thereby converted into a claim for cash. Also, Coffee asserts he "purchased" Knight Company stock when the Knight family sold its shares back to the Company, because the resulting proportionate increase of Coffee's interest in the outstanding stock of the Knight Company constituted a purchase within the meaning of the Securities Exchange Act and Rule 10b-5. In dismissing the complaint the District Court decided that the foregoing allegations were insufficient to show Coffee was a seller or purchaser. To the contrary, we believe Coffee has alleged facts adequately demonstrating that he was a seller, and perhaps a purchaser, and therefore has standing to sue under the Securities Exchange Act and Rule 10b-5.

The Securities Exchange Act broadly defines the terms "sale" and "sell", by specifying that "each include[s] any contract to sell or otherwise dispose of." 15 U.S.C.A. § 78c(a) (14). As stated in Fidelis Corp. v. Litton Industries, Inc., 293 F.Supp. 164, 169–170 (S.D.N.Y.1968), "This broad language indicates a Congressional intent not to limit 'purchase' and 'sale' to traditional face-to-face commercial transactions." This Court in Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960) reversed a dismissal of a complaint grounded on § 10(b) of the Securities Exchange Act of 1934, and in an opinion written by Chief Judge Brown declined to accept a narrow construction of the term 'sale', holding that the Securities Exchange Act reaches what may not be "sales" in "the strict common law traditional sense". 282 F.2d at 203.

In a series of recent cases decided July 14, 1970, Herpich v. Wallace, 430 F.2d 792 (5th Cir.); Shell v. Hensley, 430 F.2d 819 (5th Cir.); Herpich v. Wilder, 430 F.2d 818 (5th Cir.), Judge Ainsworth comprehensively considered the purchase-sale requirement of Section 10 (b) and Rule 10b-5, and decided, "that for a plaintiff to establish his standing to maintain a Rule 10b-5 action for damages, he must be a purchaser or seller of securities involved in connection with the alleged rule violation." Herpich v. Wallace, *supra*, 430 F.2d at 806. It is true that in *Wallace* the Court found the minority was not entitled under Section 10(b) and Rule 10b-5 to sue on behalf of themselves as the circumstances were there presented to the Court. However, this result seems to have occurred only because the plaintiffs *did not claim* they had purchased or sold securities in conjunction with the defendants' alleged misconduct. The Court carefully noted that the purchase-sale requirement must be construed "broadly and flexibly" in order to effectuate the Congressional purpose underlying the Securities Exchange Act of 1934. 430 F.2d at 806. Consequently, the Court proceeded to find that an unconsummated resolution by a corporation's board of directors to merge their company into another provided federal jurisdiction under Section 10(b) and Rule 10b-5 for a derivative action brought by minority shareholders of the corporation to be merged.

The Second Circuit, also has liberally construed the terms "sale" and "sell". See, Erling v. Powell, 429 F.2d 795 (8th Cir. 1970). In Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), the Second Circuit decided that Crane was a "forced seller" of securities under its earlier decision in Vine v. Beneficial Finance Company, 374 F.2d 627 (2nd Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) and thus reversed the district court, which had dismissed Crane's complaint on the theory that Crane lacked standing under § 10(b) of the Securities Exchange Act and Rule 10b-5. Crane had made a tender offer to shareholders of Westinghouse Air Brake, but was frustrated by American Standard's manipulation of the price of Air Brake's stock on the New York Stock Exchange. Thereafter, Air Brake merged into American Standard, and Crane, as a holder of Air Brake shares, received American Standard stock at the time of the merger. Since American Standard's control of the price of Air Brake's stock eventually resulted in Crane's having to sell American Standard stock under the threat of an antitrust action, Crane had standing under the Securities Exchange Act and Rule 10b-5 to complain of American Standard's manipulation of the Air Brake shares. In so deciding the court pointed out "The purchase-sale requirement must be interpreted so that the broad design of the Exchange Act, to prevent inequitable and unfair practices on securities exchanges and over-the-counter markets, is not frustrated by the use of novel or atypical transactions. A. T. Brod & Co. v. Perlow, 2 Cir., 375 F.2d 393 at 397." 419 F.2d at 798.

Coffee relies heavily on Vine v. Beneficial Financial Company, *supra*, to support his position.

In *Vine*, a unanimous panel held that when a corporation in which the plaintiff is a stockholder is merged into the defendant corporation, the plaintiff has standing as a "seller" under § 10(b) of the Securities Exchange Act despite the fact that the plaintiff still possessed his stock at the time he brought suit. The court held that since the plaintiff as a practical matter would have to exchange his shares for cash, either by accepting defendant's cash offer or by pursuing his right of appraisal, plaintiff was a "seller" within the meaning of the Act. We think the reasoning contained in *Vine* is applicable to the allegations of this case, even though the District Court here sought to distinguish *Vine* by pointing to the fact that in *Vine* a merger of two corporations was accomplished through a "short form merger" provided by state statute. To the District Court "the lack of any acts following statutory procedure to liquidate, dissolve or merge the Knight Company distinguishes this case from *Vine*." However, although it is true that in *Vine* two companies had merged via a statutory "short form merger", *Vine* does not turn on whether the questioned merger is accomplished pursuant to state law, but rather on whether the shareholders, as a result of the statutory merger, have in substance become sellers despite the fact that they still hold stock certificates in a non-functioning corporation. While the plaintiff in *Vine* still possessed his stock, the Court decided that there had been a sale within the meaning of the Act, and the Rule, because "in order to realize any value for his stock, appellant must exchange the shares for money from appellee, *as a practical matter* appellant must eventually become a party to a 'sale' as that term has always been used". 374 F.2d at 634. (Emphasis added). Moreover, *Vine* cannot be distinguished from our case on the basis that *Vine* was concerned with a merger, while the present case involves a liquidation. In both instances the shareholder "as a practical matter" has no choice but to surrender his interest in the corporation and to exchange his shares for cash.

It may be that a fact finder will eventually determine that Coffee is not a forced seller within the meaning of the *Vine* case. At trial it may become clear that the reason Knight Company has failed to comply with appropriate state liquidation statutes is because the directors have not planned, nor accomplished, liquidation but rather continue to carry on the Company's regular course of business. However, at this point in the litigation we are confined to evaluating Coffee's allegations, and they charge that Knight Company has been substantially liquidated pursuant to Permian's plan. If that is true, then Coffee's stock has been converted into a claim for cash, and thus, as demonstrated by the foregoing cases, he would have standing as a seller to sue under § 10(b) of the Securities Exchange Act and Rule 10b-5.

■ Because we find plaintiff's allegations are sufficient to demonstrate standing as a seller of securities under the Act, we need not decide whether plaintiff was a purchaser when the Knight family shares were sold back to the Company.

The order dismissing the complaint will be reversed, and the action remanded for proceedings in accordance with this opinion.