**Kjell ARNESEN et al., Plaintiffs,**

v.

**SHAWMUT COUNTY BANK, N. A., Defendant,**

v.

**C. L. SYSTEMS, INC. et al., Third-Party Defendants.**

Civ. A. No. 79–1077–C.

United States District Court, D. Massachusetts.

Dec. 31, 1980.

Grover H. Nix, III, Parker, Coulter, Daley & White, Edmund Polubinski, Jr., Davis, Malm & D'Agostine, Robert Potters, Nix & Wendell, Boston, Mass., for plaintiffs.

James J. Marcellino, Gaston Snow & Ely Bartlett, Boston, Mass., for defendant.

Bernard J. Bonn, III, Boston, Mass., for third-party defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This action, filed on June 1, 1979, alleges that the defendant Shawmut County Bank, N. A. (Shawmut) aided and abetted a securities violation under the Securities Exchange Act of 1934, 15 U.S.C. § 78j (Count II), and contributed to the breach of a fiduciary duty owed to the shareholders of a close corporation by two other principal individual shareholders. (Count III). *Donahue v. Rodd Electro-Type*, 367 Mass. 578, 328 N.E.2d 505 (1976). Count I of the complaint was voluntarily dismissed. Third-party defendants entered the case on August 27, 1980. The action is before the Court and oral argument has been heard on the defendant's motions to dismiss both claims for want of prosecution (Fed.R. Civ.P. 41(b)) and for failure to state a claim upon which relief can be granted. (Fed.R. Civ.P. 12(b)(6)).

The facts behind this controversy are not new to this Court. Two earlier federal court actions were based on the same course of events.[1]

The motion to dismiss the complaint with prejudice for want of prosecution is denied, although this Court observes that the plaintiffs came very close to suffering dismissal and have conducted this litigation in a confused manner, hampering the efficient management of a docket and preventing the expeditious resolution of disputes.

■ No doubt exists that this Court has the inherent power, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), as well as authority under the Federal Rules of Civil Procedure [Rule 41(b)], to dismiss a complaint with prejudice for want of prosecution. Such a dismissal is nevertheless a "harsh sanction," and the prevailing guideline in the First

Circuit is that the sanction "should be resorted to only in extreme cases." *Richman v. General Motors Corp.*, 437 F.2d 196 (1st Cir. 1971). "The power of the court to prevent undue delays must be weighed against the policy of the law favoring the disposition of cases on their merits." *Id.* at 199. The First Circuit Court of Appeals has, however, recently upheld some dismissals with prejudice, particularly where plaintiffs have shown willful and deliberate disregard of the judicial process. *Santiago et al v. Gonzolez Rivera et al*, 553 F.2d 710 (1st Cir. 1977); *Pease v. Peters*, 550 F.2d 698 (1st Cir. 1977); *Associacion de Empleados etc v. Rodriguez Morales*, 538 F.2d 915 (1st Cir. 1976). The instant case raises the prospect of dismissal for want of prosecution based on failure to serve process, and that particular factual issue has arisen far less often in the Court of Appeals for this Circuit. Authority in other circuits, *Anderson v. Air West, Inc. et al*, 542 F.2d 522 (9th Cir. 1976), suggests that "delay in serving a complaint is a particularly serious failure to prosecute because it affects all the defendant's preparations."

The facts on which this complaint is based occurred prior to June 28, 1976. This complaint was filed on June 1, 1979, shortly before the three-year statute of limitations had run. Service of the summons and complaint on the defendant did not occur until July 31, 1980. The plaintiffs even admit that the complaint was not filed with the Marshall's office until May 28, 1980, a year after filing the complaint. The plaintiffs are totally responsible for the unexplained delay in service. In fact, service was made only after this Court called counsel in on April 14, 1980 and asked on its own initiative why the docket showed no activity. In oral argument on the motion to dismiss on September 26, 1980, counsel for the plaintiffs claimed that failure to serve process was merely an oversight, arising when one attorney took over the litigation from another on the assumption that service had

---

1. In June of 1979 *Arnesen v. Computer Library Services Inc., et al.*, C.A. 77–2164 was dismissed on jurisdictional grounds. The plaintiffs in the present case voluntarily dismissed their claims against the defendants in *Arnesen v. Hatvany et al*, C.A. 79–1212 on January 16, 1980. The defendants in the latter action are the third-party defendants in the present case.

occurred. In an affidavit filed subsequent to the hearing the attorney who took over the litigation provides a different explanation for the delay. He admits that he talked to defendant's counsel, who was before the court on another matter, on August 3, 1979, and left the conversation fully aware that service had not been made. I find that by their own admission plaintiffs knew that service had not occurred, and that makes the delay all the more unreasonable under the circumstances. See *Cristanelli v. United States Lines*, 74 F.R.D. 590 (C.D.Ca.1977).

The decision to file the complaint in issue was made with the intent of beating the limitation period, but the decision to serve the complaint and to pursue prosecution only came after two prior actions had been terminated. "If service can be delayed indefinitely once the complaint is filed within the statutory period," any expectations of repose "are defeated and the statute of limitations no longer protects defendants from stale claims." *Anderson v. Air West, Incorporated, et al, supra* at 525.

■ The failure of plaintiffs to serve process is a serious failure, suggesting at the very least careless practice. In the final analysis, however, I rule that it is not severe enough under these particular circumstances to warrant dismissal with prejudice. No willful or deliberate disregard of this Court's authority is evident. The conduct of plaintiffs' counsel is not contumacious. Some of the voluminous discovery generated in two earlier actions brought by the same plaintiffs on the same facts can be used by the defendant here, Shawmut, even though the evidence would not be admissible under FRE 804(b)(1) against Shawmut itself. The defendant will suffer no serious prejudice from the delay, though this Court is aware that Shawmut is subject to some inconvenience. Finally, there is no history, within this specific litigation, of dilatory actions by the plaintiffs. Indeed, discovery is proceeding at a good pace. There is serious, but not "extreme" error in the failure to prosecute.[2]

■ The motion to dismiss Count III, the breach of fiduciary duty claim, is also denied. Shawmut contends that the effect of two dismissals by the plaintiffs of similar claims in two prior actions collaterally estops the plaintiffs from stating the claim in this action. *Parkland Hoisery Company v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The defendant Bank seeks to invoke Fed.R.Civ.P. 41(a)(1) which states: "... a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." If the two earlier dismissals served as an "adjudication upon the merits" this Court would consider the estoppel argument further. Yet the short answer to the defendant's contention is that dismissal of a claim in a prior action is not the same as the dismissal of an action within the meaning of Fed.R.Civ.P. 41(a)(1). *Smith, Kline & French Laboratories v. A. H. Robins Co. et al*, 61 F.R.D. 24 at 29 (E.D.Pa.1973).

■ Briefly and simply stated, Count III of the complaint alleges that the defendant Bank, by forcing an unnecessary foreclosure sale of the assets of Computer Library Services Inc. (C.L.S.I.) and then financing the repurchase of those assets under a different corporate name by the very management on which it had foreclosed, participated in a scheme to freeze-out minority shareholders of C.L.S.I. The allegation is that the Bank aided the breach of a fiduciary duty owed by substantial shareholders of the close corporation, C.L.S.I., to the minority shareholders, the plaintiffs in this action. Such a claim was first made against individual shareholders, third-party defendants here, as Count V of a 1977 complaint (C.A. No. 77–2164–C). That claim was dismissed immediately prior to the trial of the action in 1979, along with five other counts. The trial did go forward on Count VI, however, even though a jurisdictional

---

**2.** As discovery proceeds should the record show that Shawmut has suffered actual prejudice, the motion to dismiss for failure of prosecution may be renewed.

defect later prompted dismissal. The critical point is that the entire action, itself, was not dismissed.

In C.A. No. 79–1212–C the plaintiffs once again pressed the breach of fiduciary duty claim against the substantial shareholders of C.L.S.I. That entire action was voluntarily dismissed by the filing of a notice of dismissal under Fed.R.Civ.P. 41(a)(1) on January 16, 1980. I rule that this second dismissal does not operate as an "adjudication upon the merits" within the meaning of Rule 41(a)(1) because the earlier dismissal involved only a claim, and not an entire action. Taking the facts as plaintiffs allege them, Count III states a claim upon which relief can be granted.

Count II raises a different issue, and I rule in favor of the defendant's motion to dismiss that claim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Count II alleges that the scheme of foreclosure sale and repurchase in which the Bank participated led to a forced sale of a security within the meaning of the securities laws because it "fundamentally changed the nature of the investment of plaintiffs in C.L.S.I. from an interest as a shareholder in a going enterprise into a worthless interest in a shell corporation." (§ 56 Complaint).

■ It is well-established that in order to pursue a private claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 17 C.F.R. § 240.-106–5, one must be a "purchaser" or "seller" of securities. *Blue Chip Stamps Co. v. Manor Drug Co.*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The narrow question before this Court is whether the plaintiffs may be considered "sellers" of securities, even though no actual sale occurred.

What did occur may be briefly summarized once again. The plaintiffs owned shares of C.L.S.I. The defendant Bank foreclosed on all the assets of C.L.S.I. when the corporation defaulted on a loan—a default which the plaintiffs allege was orchestrated by the Bank and third-party defendants through the write-down of account receivables. An auction was held and all of the assets of C.L.S.I. were sold to C.L. Systems Inc., a new corporate entity that was run by some of the shareholders of the old corporation who are the individual third-party defendants here and financed by the defendant bank that had initiated foreclosure. The plaintiffs were left with stock of little value in an ongoing corporate entity that had ceased its active existence but had not been liquidated.

■ In at least two situations the courts have recognized the "forced seller" doctrine, which allows a plaintiff to put himself in the shoes of a "seller" under the securities laws to pursue a 10b–5 action even though no actual sale occurred, because the circumstances are such that they have the practical effect of a sale and render the sale itself a formality. A shareholder caught under the pressure of a short form merger may be a forced seller. *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967). The reality of short form mergers is that the merged corporation actually disappears, and the minority shareholder of the merged entity is left with no choice but to either convert his shares to cash at the price fixed by the terms of the merger or else elect "appraisal." The net result in either case is that the shares are "involuntarily converted into a claim for cash." *Vine v. Beneficial Finance Co., supra* at 634. It is the absence of choice which allows courts to single out such shareholders as "forced sellers" even though they have not, of course, actually sold their shares. The exception is not, however, broadly construed, and unless the short form merger actually occurs the forced seller doctrine will not be recognized. *Greenstein v. Paul,* 400 F.2d 580 (2d Cir. 1968).

When a corporation is liquidated out from under some minority shareholders, all to the benefit of some majority owners, the courts may also endorse the "forced seller" exception. *Dudley v. Southeastern Factor and Finance Corp.*, 446 F.2d 303 (5th Cir. 1971); *Alley v. Miramon,* 614 F.2d 1372 (5th Cir.

1980); *Feldberg v. O'Connell*, 338 F.Supp. 744 (D.Mass.1972). The distinctive feature of that line of cases is that liquidation occurs, leaving no doubt that any ownership interest has not been converted from shares to a claim for cash. The plaintiff's complaint borrows some of the general language of the court in *Dudley v. Southeastern Factor and Finance Corp., supra,* yet the plaintiffs overlook the limitation of the case to facts of liquidation, and it would be inaccurate to conclude that the plaintiffs have a "right solely to a payment of money" in the instant case. *Dudley, supra.*

 It is true, of course, that liquidation here may be a formality and the absence of any C.L.S.I. assets reveals that the discussion revolves more around legalities than contrasting realities. Yet there is good reason to read the forced seller exceptions narrowly. Recent Supreme Court cases, e. g. *Blue Chip Stamps, supra,* have expressed the need to confine the growth of Rule 10b–5 actions within manageable limits. Lower courts have not applied the forced seller doctrine beyond the facts of short form mergers and liquidations. *Greenstein, supra; Alpex Computer Corp. v. Pitney-Bowes Inc.,* 417 F.Supp. 328 (S.D.N.Y.1976). In the latter case the court distinguished the forced seller exceptions and ruled that none of the cases supporting the doctrine applied there. The court observed:

> This fact pattern falls within none of the foregoing cases; it is not characterized by the termination of the corporate entity, or by the conversion of a stock ownership into a claim for cash, or by the liquidation and distribution of the assets.
>
> *Alpex Computer, supra.*

So it is here. C.L.S.I. continues to exist, the plaintiffs own stock, and no formal liquidation has occurred. I rule that the plaintiffs are not within the "forced seller" exception of the securities laws and that therefore the Count which alleges a Rule 10b–5 violation fails to state a claim upon which relief can be granted because the alleged misconduct did not occur "in connection with the purchase or sale" of securities.

The plaintiffs speak here, not principally as investors, but as shareholders complaining of alleged corporate mismanagement. *L. R. Dyer v. Eastern Trust and Banking Co.,* 336 F.Supp. 890 (D.Maine 1971). The breach of fiduciary claim remains, and the securities count is dismissed.

Order accordingly.