David **BATCHELDER**; Elaine Batchelder, individually, and on behalf of the Shareholders; That & Other Stuff, Inc.

v.

**NORTHERN FIRE LITES, INC.**; Cyril J. Gundling; Vivian Gundling; Ed Warburton; William Putnam.

Civ. No. 85–447–D.

United States District Court, D. New Hampshire.

March 20, 1986.

William B. Gamble, Portsmouth, N.H., for plaintiff.

Jack B. Middleton, Manchester, N.H., Peter Lynch, Concord, N.H., for defendants.

Ed Warburton, pro se.

## ORDER

DEVINE, Chief Judge.

The ignition point of this litigation is a fire-starting product known as "That Stuff". Plaintiffs David and Elaine Batchelder, individually and on behalf of the shareholders of That & Other Stuff, Inc. ("TOSI"), have brought suit against the defendant officers of that corporation, Cyril and Vivian Gundling and Ed Warburton, as well as the New Hampshire corporation which has subsequently undertaken to manufacture "That Stuff", Northern Fire Lites, Inc. ("NFL"), and the director and sole shareholder of Northern Fire Lites, William Putnam. Plaintiffs claim, in ten counts, violations of federal and state secu-

rities laws and regulations, common law fraud, loss of corporate opportunity, negligence, breach of contract, interference with contract, and violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. In addition to 28 U.S.C. §§ 1331 and 1337, jurisdiction is purportedly grounded upon the Securities Act of 1933, 15 U.S.C. § 77v; the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; and the Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, 15 U.S.C. § 78j.

As a result of some confusion as to which defendants were named as responsible parties in Counts III, VI, VII, and VIII, defendants NFL and Putnam have moved to dismiss these counts. Plaintiffs, however, acknowledge that these four counts have no application to defendants .NFL and Putnam. In addition, these defendants have moved to dismiss Count IV alleging violation of section 17 a of the Securities Act of 1933, 15 U.S.C. § 77q. Plaintiffs now concede that the Court's decision in *Manchester Bank v. Connecticut Bank & Trust Co.*, 497 F.Supp. 1304 (D.N.H.1980), precludes a private right of action under this section of the federal securities law as against all defendants. Count IV is accordingly dismissed. Thus, presently before the Court is the motion of defendants Putnam and NFL to dismiss four of the five remaining counts (I, II, V, and X) of the complaint and plaintiffs' objection thereto.[1]

In ruling on the motion to dismiss, Rule 12(b)(6), Fed.R.Civ.P., the Court follows the well-established and familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02,

2 L.Ed.2d 80 (1957); *Melo-Tone Vending, Inc. v. United States*, 666 F.2d 687, 688 (1st Cir.1981); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976); *Chasan v. Village District of Eastman*, 572 F.Supp. 578 (D.N.H.1983); *Dunlap v. Aulson Corp.*, 90 F.R.D. 647, 654 (D.N.H.1981).

According to the allegations contained in plaintiff's complaint, defendant Cyril Gundling is a majority shareholder and President of TOSI, the plaintiff corporation; defendant Vivian Gundling is Vice President, Treasurer, and Director of TOSI; and defendant Ed Warburton is a Director of TOSI. TOSI was organized to manufacture and market the above-mentioned firestarting product, "That Stuff". These three corporate officers, to achieve that end, sought to acquire capital by entering into a loan agreement with plaintiffs David and Elaine Batchelder in June 1983. This agreement provided that the corporation would receive a loan of $30,000, and in consideration thereof plaintiffs would receive sixty shares, or twenty percent, of the stock in the corporation.

During the course of negotiations prior to execution of the loan agreement, defendants Gundling and Warburton made certain representations to plaintiffs, including: (1) that defendant Gundling intended to manufacture and market "That Stuff" through TOSI, and (2) that "That Stuff" and "That & Other Stuff" were protected by state trademark law.

TOSI started to manufacture and market "That Stuff" in July 1983. In late spring 1984, plaintiffs Batchelder spoke with defendant William Putnam, sole shareholder and director of defendant NFL, and informed him of their twenty percent interest in TOSI. In July 1984 plaintiffs Batchelder discovered that no trademark had been established in New Hampshire for "That Stuff", so plaintiffs filed an application therefor. TOSI continued to manufacture and market "That Stuff" until August 2,

---

**1.** Defendants have requested a hearing on the motion to dismiss. The Court, however, is able to resolve the issues presented without resort to

hearing based on the papers filed by the parties. *See,* Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

1984, when (the Court notes ironically) the factory was consumed in flames.

One month after the fire at TOSI's factory, defendants Gundling entered into an agreement with defendants NFL and Putnam whereby NFL would manufacture and market "That Stuff". Defendants Gundling thereafter became officers of NFL. None of the facts regarding the manufacture and marketing of "That Stuff" by NFL was ever disclosed to plaintiffs prior to or after execution of the June 1983 loan agreement with the defendant officers of TOSI. Similarly, it was never disclosed to plaintiffs that there had been a failure to register the "That Stuff" trademark.

## Count I

Defendants NFL and Putnam seek first to dismiss Count I of the complaint alleging common law fraud. Defendants premise their argument on the grounds that Count I fails to allege that defendants NFL and Putnam made false representations to plaintiffs Batchelder and is therefore insufficient under Rule 9(b), Fed.R.Civ.P., and further that neither of these defendants owed plaintiffs a duty to disclose information and thus cannot be liable for alleged omissions. The Court, for the following reasons, finds and rules that this count should be dismissed for failure to state a claim.

In this action, plaintiffs have not alleged that defendants NFL or Putnam made any misrepresentations and thus the claim of fraud against defendants must be premised upon an alleged failure to disclose. Plaintiffs apparently complain that it was never revealed that the defendant officers of TOSI were going to enter into an agreement in September 1984 with defendants NFL and Putnam to manufacture and market "That Stuff".[2] This omission, according to plaintiffs, precluded their pursuit of state injunctive relief.

It is well established that fraud may consist of either the intentional conceal-ment of a material fact or a false statement of a fact. *Leclerc v. Prudential Insurance Co. of America,* 93 N.H. 234, 39 A.2d 763 (1944); *Nelson v. Morse,* 91 N.H. 177, 16 A.2d 61 (1941). It is similarly well established that for a failure to disclose to be actionable fraud, there must be a duty arising from the relation of the parties to so disclose. *Benoit v. Perkins,* 79 N.H. 11, 104 A. 254 (1918); *Charlton v. Brunelle,* 82 N.H. 100, 130 A. 216 (1925). Review of the pleadings, even liberally construed, fails to reveal the requisite relationship between the parties from which a duty to disclose would arise.

■ The Court notes first that defendant Putnam was at no time an officer, director, or shareholder of TOSI, and conversely that plaintiffs Batchelder were at no time shareholders of defendant NFL. There was thus no fiduciary relationship extant between the parties.

Plaintiffs argue that a duty did exist, since the September 1984 agreement permitting defendant NFL to produce "That Stuff" would never have occurred "but for" the acts of defendant NFL and Putnam, and that they therefore aided and abetted in the wrongful acts of defendant Gundling and Warburton. While it is undoubtedly true that the execution of the September 1984 agreement would not have occurred "but for" the involvement of defendants NFL and Putnam, plaintiffs improperly seek to expand the scope of what constitutes aiding and abetting. According to plaintiffs, a second corporation (NFL) about to enter into an advantageous relationship with a first corporation (TOSI) by acquiring the first corporation's assets would have a duty to disclose such transaction to the minority shareholders of the first corporation. This alleged duty would exist where the second corporation knew the business opportunity was created by the wrongful conduct of the first corporation's officers. Under the facts of this

---

**2.** There is nothing in the complaint to support an allegation that plaintiffs were induced to enter the June 1983 loan agreement by virtue of

any fraudulent conduct of defendants NFL and Putnam.

case, such a duty does not exist. In the aggressive and unsympathetic world of corporate enterprise, when a stronger corporation takes advantage of a weaker one, no duty to disclose is created in the acquiring corporation to the minority shareholders of the weaker entity. Those injured shareholders must seek recourse against the officers of their corporation.

As noted in the context of securities law violations, an alleged aider and abettor must "substantially assist" in the primary violation, which means that the acts of the aider and abettor must be the proximate cause of the harm of which plaintiffs complain. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir. 1985). As revealed in the pleadings, while NFL may have been opportunistic, its actions cannot be considered the proximate cause of plaintiffs' harm, such proximate cause being attributable to the acts of TOSI's officers. Allegations of a "but for" causal relationship are simply insufficient. *Id.* at 63. Accordingly, the Court finds that no duty to disclose existed between plaintiffs Batchelder and defendants NFL and Putnam; thus Count I fails to state a claim of common law fraud against these defendants. The motion to dismiss of Count I is accordingly granted.

## Count II

Defendants NFL and Putman have also moved to dismiss Count II alleging violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j,[3] and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.[4] For the following reasons, the Court finds and rules that the motion to dismiss this count should be granted.

■ In order for plaintiffs to avail themselves of the protections afforded by the above provisions, they must demonstrate that the alleged fraud occurred in connection with the purchase and sale of a security. The "purchaser-seller" standing requirement imposed by the "in connection with the purchase and sale of any security" clause of both the statute and the rule was established initially in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 464 (2d Cir.1952), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), and reaffirmed over twenty years later by the United States Supreme Court in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975). This standing requirement, known as the *Birnbaum* rule, was articulated by the Second Circuit as follows:

> Section 10(b) ... was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller.

*Birnbaum, supra,* 193 F.2d at 464.

■ In the case *sub judice,* plaintiffs Batchelder apparently complain of two

---

**3.** 15 U.S.C. § 78j provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails
>
> ....
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**4.** 17 C.F.R. § 240.10b–5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

fraudulent transactions. First, they claim that Rule 10b–5 was violated during the negotiations leading up to the June 1983 loan for stock transaction with TOSI. Based upon a liberal construction of the pleadings, the Court can find no factual allegations implicating defendants NFL and Putnam in that particular transaction. The alleged fraudulent conduct of these defendants, i.e., their failure to disclose material facts to plaintiffs, did not occur until at least a year later. The defendants' alleged fraudulent conduct thus was not "in connection with" the initial purchase or sale of securities in TOSI.

Plaintiffs also seek relief under Rule 10b–5 for the corporate reorganization effected in September 1984 whereby defendants Gundling and Warburton transferred TOSI's primary asset, "That Stuff", to defendants NFL and Putnam in return for corporate positions in defendant NFL. While there was no apparent transfer of securities between the parties at that time, plaintiffs seek to avail themselves of exceptions to the *Birnbaum* rule. Specifically, plaintiffs seek standing under what is referred to as the "forced seller" doctrine exception to the rule.

One of the seminal cases invoking this doctrine was decided by the United States Court of Appeals for the Second Circuit in 1967. *Vine v. Beneficial Finance Company,* 374 F.2d 627 (2d Cir.1967), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). In *Vine,* the court held that a dissenting and nontendering shareholder who was "cashed out" as a result of a short form merger of his corporation had standing to bring suit under Rule 10b–5. The court held the nontendering shareholder to be a "forced seller" on the ground that once the short-form merger had been achieved, plaintiff's rights in the stock were frozen and he was left with the option of either exchanging his shares for cash or pursuing his right of appraisal. The formality of a sale was not a prerequisite to standing.

Similarly, the "forced seller" exception to the *Birnbaum* rule has application in the

context of a fraudulent corporate liquidation. *Alley v. Miramon,* 614 F.2d 1372, 1387 (5th Cir.1980); *Coffee v. Permian Corp.,* 434 F.2d 383, 386 (5th Cir.1970), *cert. denied,* 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146, *reh'g denied,* 414 U.S. 882, 94 S.Ct. 41, 38 L.Ed.2d 129 (1973). In *Coffee,* a minority stockholder in a company was found to be a "forced seller" when the majority stockholder voted to liquidate the company and appropriate its assets. Under these circumstances, the court noted that as a practical matter the minority shareholder had no choice but to relinquish his interest in the company and exchange his shares for cash. *Id.* at 385–86.

■ The Court finds that the "forced seller" doctrine has no application to the factual allegations in this case. While plaintiffs argue that the sale of TOSI's major asset to defendant NFL effectively rendered their shares in TOSI valueless, it is undisputed that there was neither a merger nor a liquidation of TOSI in September 1984. TOSI continues to exist as a corporation, albeit as a shell, and plaintiffs continue to possess sixty shares, or twenty percent ownership, therein. Plaintiffs' investment in TOSI was thus not changed from an interest in a going enterprise into a right solely to a payment of money for their shares. Accordingly, plaintiffs cannot be considered "forced sellers". The United States District Court for the District of Massachusetts reached a similar result in *Arneson v. Shawmut County Bank,* 504 F.Supp. 1077 (D.Mass.1980).

In *Arneson,* plaintiffs owned shares in a corporation, CLSI. Defendant Bank foreclosed on all of CLSI's assets when CLSI defaulted on a loan. The assets were sold to another corporation in which some of the shareholders in CLSI were now officers. Plaintiffs were left with stock of minimal value in an "ongoing corporate entity that had ceased its active existence but had not been liquidated". *Id.* at 1081. The court recognized that the "forced seller" exception is not to be broadly construed and that Rule 10b–5 actions are not without limitation. As the court noted:

It is true, of course, that liquidation here may be a formality and the absence of any CLSI assets reveals that the discussion revolves more around legalities than contrasting realities. Yet there is good reason to read the forced seller exceptions narrowly. Recent Supreme Court cases, e.g., *Blue Chip Stamps, supra,* have expressed the need to continue the growth of Rule 10b–5 actions within manageable limits.

*Id.* at 1082. In holding the forced seller doctrine inapplicable to the plaintiffs in *Arneson,* the court reasoned that the corporation CLSI continued to exist, plaintiffs owned stock, and no formal liquidation had occurred. *Id.* This reasoning is instructive in the instant case, and the Court finds that plaintiffs Batchelder do not have the requisite standing to bring suit under Rule 10b–5.[5] *See also Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir.1974) (dilution of shareholders' equity did not give stockholders standing as forced sellers).

■ Plaintiffs also claim that the September 1984 transfer of assets from TOSI to NFL implicates Rule 10b–5 since such activity constituted corporate mismanagement. Indeed, a minority shareholder can seek relief under Rule 10b–5 from a variety of unfair corporate actions by management or from a breach of fiduciary duty by management and/or the majority shareholders. *See Goldberg v. Meridor,* 567 F.2d 209 (2d Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978) (corporation's issuance of stock or securities for inadequate consideration implicates Rule 10b–5); *Wright v. Heizer Corp.,* 560 F.2d 236 (7th Cir.1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978) (corporation's pledge of subsidiary's stock to secure loan to controlling shareholder implicates Rule 10b–5); *Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273 (9th Cir.1979) (unfavorable sale of corporate assets for shares in another corpora-

tion implicates Rule 10b–5). It is, however, well established that corporate mismanagement alone is not sufficient to implicate Rule 10b–5 and that there is a further requirement of deception in the mismanagement. *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). And a material nondisclosure by management that effectively denies minority shareholders an opportunity to seek state injunctive relief from the alleged corporate mismanagement satisfies this deception requirement for a Rule 10b–5 action. *See Healey v. Catalyst Recovery of Pennsylvania,* 616 F.2d 641 (3d Cir.1980); *Kidwell ex rel. Penfold v. Meikle, supra; Goldberg v. Meridor, supra.*

■ While plaintiff's complaint in Count II does allege corporate mismanagement and deception precluding an opportunity to seek state relief from the diversion of TOSI's assets, the Court finds that it fails to state a claim under Rule 10b–5 because the alleged deceptive corporate mismanagement does not involve the purchase or sale of a security, either by the shareholders individually or in the derivative suit by the corporation. *See* F.H. O'Neal and R. Thompson, 2 *O'Neal's Oppression of Minority Shareholders* § 8:19 (2d ed. 1985). As noted by one commentator, "[a] corporate purchase or sale of non-security assets in exchange for consideration which did not include securities would clearly not be covered [under Rule 10b–5], and any management misconduct in that situation would have to be remedied under state law." *Id.* at n. 24. As noted previously, there was no purchase or sale of a security by the individual plaintiffs with respect to the September 1984 transaction. Moreover, that transaction as described in the complaint did not involve the sale of any securities. A nonsecurity asset, "That Stuff", was transferred from TOSI to NFL, and the corporate officers of TOSI then became

---

**5.** Similarly, plaintiffs, as minority shareholders, cannot maintain a derivative action on behalf of TOSI where that corporation is not a purchaser or seller of securities. *See, e.g., Wittenberg v. Continental Real Estate Partners, Ltd.,* 478

F.Supp. 504, 509–10 (D.Mass.1979) (plaintiffs cannot bring derivative action on behalf of partnership when partnership is not a purchaser or seller), *aff'd* 625 F.2d 5 (1st Cir.1980).

officers in NFL. Accordingly, the Rule 10b–5 claim based upon corporate mismanagement is without merit.

■ Plaintiffs argue further that defendants NFL and Putnam are secondarily liable under the doctrine of "aiding and abetting". Liability for aiding and abetting a securities law violation requires three elements: that an independent wrong existed; that the aider and abettor knew of the wrong's existence; and that substantial assistance was given in effecting that wrong. *Brill v. Burlington Northern, Inc.*, 590 F.Supp. 893 (D.Del.1984).

■ In dismissing this theory of liability, the Court need go no further than the first element. Where there is no independent wrong or primary violation of Rule 10b–5, there can be no subsequent liability for aiding and abetting. Here, there is no factual allegation that defendants NFL and Putnam assisted in the initial loan for stock transaction in June 1983; hence, there can be no secondary liability with respect to that transaction. And, as discussed above, there was no purchase and sale of a security with respect to the transfer of TOSI's primary asset in September 1984, so there was no Rule 10b–5 violation at that time. Thus, defendants NFL and Putnam cannot be secondarily liable for aiding and abetting where there was no primary violation.

### Count V

Defendants NFL and Putnam also seek to dismiss Count V, which claims a violation of state securities law, New Hampshire Revised Statutes Annotated ("RSA") 421–B:3. This statute provides that

[i]t is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

I. To employ any device, scheme, or artifice to defraud;

II. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

III. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The Court finds that this count also fails to state a claim upon which relief can be granted.

■ First, although plaintiffs allege that *all* defendants caused stock to be sold to plaintiffs pursuant to an artifice in 1983, the complaint is devoid of any alleged facts indicating that defendants NFL and Putnam had any involvement in that initial transaction. Thus, to the extent that plaintiffs claim a violation of RSA 421–B:3 by defendants NFL and Putnam with respect to the June 1983 stock transaction, the claim must be dismissed. Similarly, to the extent that plaintiffs claim a violation of RSA 421–B:3 with respect to the corporate reorganization in September 1984, the claim must be dismissed since the alleged artifice must be "in connection with the offer, sale, or purchase of any security". As noted earlier, there was no purchase or sale of a security at the time of the corporate reorganization; hence, RSA 421–B:3 has no application to the alleged omissions of defendants NFL and Putnam.

### Count X

Defendants NFL and Putnam also seek to dismiss Count X, which claims a violation of RICO, 18 U.S.C. § 1961–1968. RICO makes illegal the (a) use or investment, in an interstate "enterprise", of income or its proceeds derived from "a pattern of racketeering activity"; (b) the acquisition or maintenance of any interest in, or control of, any interstate "enterprise" through a "pattern of racketeering activity"; (c) the conduct of the affairs of an interstate "enterprise" by a person employed by or associated with that "enterprise", through a "pattern of racketeering"; and (d) conspiracy to do any of (a), (b), or (c). 18 U.S.C. § 1962.

■ The existence of a RICO violation thus depends upon, at a minimum, the presence of "racketeering activity". As explained in 18 U.S.C. § 1961(1):

'racketeering activity' means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ... or (D) any offense involving ... fraud in the sale of securities ..., punishable under any law of the United States.

And in order to state a RICO claim against defendants NFL or Putnam, plaintiffs must allege (1) a pattern, of (2) "racketeering" activity, (3) through which, or with the income from which, defendants herein (4) acquired or maintained (or conspired to acquire or maintain) an investment in, or control of, or conducted the affairs of, (5) an "enterprise" engaged in or affecting interstate commerce. 18 U.S.C. § 1962; *Friedlander v. Nims*, 571 F.Supp. 1188 (1983), *aff'd* 755 F.2d 810 (11th Cir.1985).

In the instant case, the "racketeering activity" of which plaintiffs complain and which constitutes the fulcrum upon which their RICO claim balances are the alleged securities law violations of defendants. Indeed, in Plaintiffs' Objection to Motion to Dismiss at p. 26, it is stated that "[t]he plaintiffs would agree with the defendants that if there are no securities fraud violations, there can be no RICO claims." Thus, where the underlying securities fraud violations are dismissed for failure to state a claim, the attendant RICO claims must be similarly dismissed. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17–20 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Accordingly, in light of the Court's ruling earlier to dismiss the Rule 10b–5 claims against defendants NFL and Putnam, the RICO claims must also be dismissed.

### Conclusion

The Court finds and rules that the motions by defendants NFL and Putnam to dismiss Count I (common law fraud claim), Count II (Rule 10b–5 claim), Count V (state law securities fraud claim), and Count X (RICO claim), must be granted. In addition, Counts III, VI, VII, and VIII have no

application to defendants NFL and Putnam; and Count IV (claimed violation of section 17[a] of the Securities Act of 1933) is dismissed as against all defendants.

SO ORDERED.