**SAVE ON SURPLUS PENSION PLAN**

v.

**UNITED SAVER'S BANCORP, INC.; Daniel G. Edgar; Elliot Bendrihem; Raymond E. Closson.**

**Civ. No. 89–543–D.**

United States District Court, D. New Hampshire.

Sept. 24, 1990.

Hinkley & Hahn, P.A. by Lucy J. Karl, Manchester, N.H., Stull, Stull & Brody by James Brody and Mark Levine, pro hac vice, and Law Offices of Joseph H. Weiss by Joseph H. Weiss, New York City, for plaintiff.

Wiggin & Nourie by Arnold Rosenblatt, Manchester, N.H., Goodwin, Procter & Hoar by Brackett B. Denniston, III, John C. Englander and E. Michael Thomas, Boston, Mass., Sheehan, Phinney, Bass by Peter S. Cowan, Manchester, N.H., Sulloway, Hollis & Soden by Irvin D. Gordon, Concord, N.H., Widett, Slater & Goldman, P.C. by James S. Dittmar and Gordon P. Katz, Boston, Mass., for defendants.

## ORDER

DEVINE, Chief Judge.

Plaintiff Save On Surplus Pension Plan, an owner of common stock in United Saver's Bancorp ("United"), pursues a class action against United and three of its officers to recover damages incurred as a result of statements in corporate reports and letters which plaintiff contends misrepresented the corporation's financial condition. Now before the Court are defendants' motion to dismiss, defendants' motion for substitution, and plaintiffs' amended motion for class certification.

Jurisdiction is founded on the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Relevant facts as alleged in the complaint are summarized below.

United is a New Hampshire bank holding corporation with four wholly owned subsidiaries. The three individual defendants are officers of the corporation: Daniel G. Edgar is the president, Elliot Bendrihem is the vice president and chief executive officer, and Raymond E. Closson is chairman. At all relevant times these three corporate officers controlled United.

Plaintiff claims that the defendants were responsible for issuing certain documents, releases, and statements that were materially false, misleading, and made without a reasonable basis. Plaintiff asserts that these statements, disseminated to the investing public and security holders starting on March 16, 1989, and continuing through October 19, 1989 (the "Class Period"), artificially inflated the price of United stock. Some of those statements, as presented in the complaint, are detailed below.

On March 16, 1989, United issued its 1988 Annual Report. The Report painted a positive picture of recent accomplishments, and, while acknowledging minor problems, it suggested that the corporation had things well in hand. In pertinent part, the document reported the development of "our new Operations Center, through which our banking subsidiaries now report in an orderly and unified way. The result is a far stronger, more controlled organization, better positioned to compete effectively in the changing New Hampshire economy." Complaint ¶ 15. The Report also stated that,

Financially, 1988 turned out to be disappointing but not a surprise ... pri-

marily due to the fourth quarter loan charge-offs of $4.1 million and the additions to loan loss reserves. While these actions impaired earnings, they were prudent and responsible given the current real estate environment ... These factors were generally anticipated and are considered manageable in the future. The moderation of the New Hampshire economy is a healthy development that will ease the pressure on deposit rates. The start-up costs of the Operations Center are behind us and we have now begun to realize cost-efficiencies inherent in the new system. Furthermore, we will be managing growth in the future in such a way that liquidity requirements will be less costly and less critical.

*Id.*

The letter went on to discuss the future of United and the new loan processes that were being implemented to strengthen United and to protect its capital.

> But now is the time for renewed emphasis on earnings. To that end, we have strengthened the loan review process this year and have instituted appropriate service charges and fees that will improve noninterest income. The standardization of products and processes introduced this year will result in operating efficiencies, lower cost, and better utilization of our resources.

*Id.* The Shareholders letter concluded by assuring the investors that United was financially sound and in a good position to confront the slowing economy of New Hampshire: "[A]s a result of this systems consolidation, the Corporation is well positioned for the future." *Id.*

Plaintiff contends that these statements gave investors a false sense of security and that they failed to inform the investing public of United's true financial condition. As evidence of United's status, plaintiff points to the Form 10–Q which United filed on May 10, 1989, for the first quarter of 1989 that ended March 31, 1989. This report showed the net income on United's shares to be $ .45 per share, down from $ .47 per share for the same period in 1988. Plaintiff contends that this loss was a clear sign of the corporation's financial woes. According to plaintiff, instead of disclosing this to the investors, defendants issued misleading explanations. For example, plaintiff argues, the corporation explained that "[t]he increase in the first quarter 1989 loan loss provision can be attributed to the Company's proactive approach in positioning the Company into the future." Complaint ¶ 20.

In July 1989 the Wall Street Journal reported that the Directors of United omitted the quarterly dividend without explanation. In August 1989 United reported a loss for the second quarter of 1989 of $2.12 per share. In October 1989 United reported a loss of $ .81 per share for the third quarter of 1989. United also reported a loss of $3.48 per share for the first nine months of 1989.

## DISCUSSION

*1. Motion to Dismiss (documents no. 6 and 8)*

An oft-invoked section of the regulations implementing the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, makes it unlawful "for any person ... [t]o make any untrue statement of a material fact" concerning the sale of securities. 17 C.F.R. § 240.10b–5(b). Plaintiff maintains that throughout the Class Period the defendants knowingly or recklessly omitted material facts or misrepresented material facts to the investing public as part of an overall scheme to inflate the market price of United's securities.

*a. Rule 12(b)(6)*

■ Defendants move to dismiss the case for failure to state a claim. In ruling on such a motion, the Court follows the well-established requirement that the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove. *Batchelder v. Northern Fire Lites, Inc.*, 630 F.Supp. 1115, 1121 (D.N.H.1986). *See also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40

L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The facts of the complaint are taken as admitted, and the complaint can be dismissed only if the plaintiff is not entitled to relief under any set of facts it could prove. *Lessler v. Little*, 857 F.2d 866, 867 (1st Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989); *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 102.

■ To state a claim under Rule 10b–5, the plaintiff must allege that (1) defendants misrepresented or omitted to state material facts in connection with the purchase and sale of a security; (2) plaintiff's reliance upon such misrepresentation or omission resulted in its detriment; and (3) defendants made the misrepresentation or omission with scienter. *See* 15 U.S.C. § 78j(b);[1] 17 C.F.R. § 240.10b–5[2]. *See also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Store*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Ballan v. Wilfred Am. Educ. Corp.*, 720 F.Supp. 241, 247 (E.D.N.Y.1989).

Defendants argue that plaintiff has only pled a common law case of corporate mismanagement and that the failure to disclose mismanagement is not actionable under Rule 10b–5. Although defendants correctly point out that "corporate mismanagement alone is not sufficient to implicate Rule 10b–5," *Batchelder v. Northern Fire Lites, Inc., supra*, 630 F.Supp. at 1121, plaintiff here has pled facts sufficient to implicate Rule 10b–5. Unlike the cases upon which defendant relies—*see, e.g., Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir.1989); *and Lessler v. Little, supra*, 857 F.2d at 875–876, *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989)—plaintiff in this case has pled more than a case of corporate mismanagement. Plaintiff asserts that the defendants materially misrepresented the corporation's financial condition. Defendants' first argument must therefore fail.

The Court next turns to the question of the materiality of the representations. The Supreme Court has held "that the issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). In the context of Rule 10b–5, a fact is considered material if "there is substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," *id.* at 449, 96 S.Ct. at 2132, or the fact significantly alters the "total mix" of the information available to the investor, *id.* This fact-based standard makes the question presented particularly unsuitable for resolution by medium of a motion to dismiss. *See Seidel v. Public Service Co. of N.H.*, 616 F.Supp. 1342, 1354 (D.N.H.1985); *Pavlidis v. New England Patriots Football Club, Inc.*, 737 F.2d 1227 (1st Cir.1984); *SEC v. MacDonald*, 699 F.2d 47 (1st Cir.1983). The Court therefore rejects defendants' second argument for dismissal.

---

**1.** 15 U.S.C. § 78j(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**2.** 17 C.F.R. § 240.10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Both parties direct the Court's attention to the recent *en banc* decision in *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990). In that case, the *en banc* majority held that a plaintiff must do more to maintain an action under Rule 10b–5 than allege the "nondisclosure of material information." *Id.* at 13. The *Backman* court suggested that the trial court should have dismissed the case before it reached the jury.

> At the side bar, at the close of the opening, defendant correctly pointed out that there had been no indication that defendant had traded in its own stock, or had made a misrepresentation, or had violated any reporting requirements, and moved for a directed verdict pursuant to *Roeder* [*v. Alpha Industries Inc.*, 814 F.2d 22 (1st Cir.1987)], of which it had previously given the court a copy. The court, unhappily, failed to see that plaintiffs' case was dead on arrival, and denied the motion without comment.

*Id.* The *Backman* panel chided both plaintiffs' counsel and the trial court for instructing the jury that "[i]t is unlawful to omit to state a material fact." *Id.* at 14 n. 3. As the *Backman en banc* opinion made eminently clear, it is only unlawful to omit to state a material fact if there is a duty to disclose that fact. "Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Id.* at 13 (quoting *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980)).

But, as both parties seem to agree, *Backman* is not controlling here. Plaintiff in this case has done more than allege the failure to disclose material facts. For example, in paragraph 15 of the complaint, plaintiff quotes statements in United's 1988 Annual Report which suggested a well organized plan for handling corporate troubles. These statements, plaintiff contends, misrepresented the corporation's true financial condition. Unlike *Backman*, this case involves more than the nondisclosure of material information. In this Court's view, the First Circuit's recent opinion in *Backman* does not require dismissal of this plaintiff's case.

*b. Rule 9*

Defendants next argue that the complaint should be dismissed for failure to satisfy the specificity standard of Rule 9(b), Fed.R.Civ.P., and because it lacks a factual basis for the claim of fraudulent intent.

Rule 9(b) provides:

> In all averments of fraud or mistake the circumstances surrounding the fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally.

It is well settled that Rule 9 requires "specification of time, place and content of an alleged false representation but not the circumstances or evidence from which fraudulent interests could be inferred." *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980)).

■ Plaintiff here has specifically identified and made extensive reference to the statements that it claims to be false or misleading. Plaintiff has specified the time, place, and content of the representations claimed to be materially misleading. Rule 9 requires no more.

■ Similarly, the Court finds no merit in the defendants' argument that the complaint should be dismissed for failing to provide adequate proof of scienter; that is, "a mental state embracing intent to deceive, manipulate, or defraud". *Seidel, supra*, 616 F.Supp. at 1356. Scienter may be established by proof of knowing conduct, *MacDonald, supra*, 699 F.2d at 50, or by allegations of reckless conduct. *Seidel, supra*, at 1356. In the instant case, plaintiff alleges that the defendants acted recklessly.

> The statements alleged in paragraphs 15 through 20, and 23 were materially false and misleading and made without reasonable basis. The defendants, in a scheme and continuous course of conduct to inflate the market price of the Corporation's securities, throughout the Class Period, knowingly or recklessly omitted

material facts or misrepresented material facts to the investing public. Complaint ¶ 25. The Court finds that the plaintiff has pled his complaint with sufficient specificity and particularity to generally aver that the defendants acted with the requisite intent to defraud United's investors. Accordingly, defendants' motion to dismiss must be and herewith is denied.

### 2. Motion for Class Certification (document no. 9)

Plaintiff seeks certification of this litigation as a class action. Rule 23(a), (b)(2), Fed.R.Civ.P. Defendants have not objected.

As stated in *Holton v. L.F. Rothschild, Unterberg, Towbin,* 118 F.R.D. 280, 283 (D.Mass.1987), "It is well established that suits based on securities fraud typically give rise to the need for representative action." This Court has recently had occasion to revisit the requisites of class action certification. *Roux v. Mongan,* Civ. No. 89–452–D (Mar. 9, 1990). Here finding that the requirements of numerosity, commonality, typicality, and adequacy of legal representation are met, Rule 23(a), and that the requirements of class relief are met, Rule 23(b)(2), the Court grants the plaintiffs' motion.

Accordingly, it is ruled that the instant litigation shall be maintained as a class action, the class to be designated as comprised of:

> All persons (other than Daniel G. Edgar, Elliot Bendrihem, Raymond E. Closson, and officers, directors, their heirs, successors or assigns, and subsidiaries and affiliates of United Saver's Bancorp) who purchased shares of United Saver's Bancorp stock during the period March 16, 1989, to October 19, 1989.

### 3. Substitution (document no. 22)

United Saver's Bancorp has changed its name to Dartmouth Bancorp, Inc., and now requests that Dartmouth Bancorp be substituted for it as a defendant in this action. No objection to this motion having been offered, the motion for substitution is herewith granted.

### 4. Conclusion

For the reasons stated hereinabove, defendants' motions to dismiss (documents nos. 6 and 8) are denied. Plaintiff's amended motion for class certification (document no. 9) and defendant's motion for substitution (document no. 22) are granted.

SO ORDERED.