**APA EXCELSIOR III, L.P, et al., Plaintiffs,**

v.

**Rodney D. WINDLEY, et al., Defendants.**

**No. CIV.A.1:01–CV3126RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 29, 2004.

Wendell R. Bird, Richard L. Brittain, Jonathan Terry McCants, Bird & Loechl, Atlanta, GA, William Terrence Casey, Jr., Hicks, Casey & Barber, Marietta, GA, for Plaintiffs and Counter Defendants.

James Allen Maines, Carl Wilson Mullis, III, Cecil Francis Whitaker, III, Michael D. Grider, Alison Danaceau, Paul, Hastings, Janofsky & Walker, Atlanta, GA, for Defendants and Counter Claimant.

Albert Morris Myers, III, Paul, Hastings, Janofsky & Walker, Atlanta, GA, for Defendants.

## ORDER

STORY, District Judge.

This case comes before the Court following a November 23, 2004 hearing addressing, *inter alia*, the viability of Plaintiff's federal securities claims against Defendants Windley and Healthfield Holdings, Inc.. Following its consideration of the arguments advanced at the hearing and the evidence of record, the Court enters the following Order.

### Background

The events giving rise to this litigation were set forth by the Court in its July 27, 2004 Order, and a detailed accounting of this case's factual background will not be repeated here. The history of the case, however, can briefly be summarized as follows:

Plaintiffs, a number of investment funds and shareholders in one of the Defendant corporations, brought this action alleging that they were wrongfully "frozen out" in connection with a transfer and acquisition of corporate assets. Defendant Healthfield, Inc. ("HFI"), of which Plaintiffs were at one time investors, is a corporation providing home healthcare services. It was founded in 1986 by Defendant Rod Windley. In November 1996, HFI became a wholly-owned subsidiary of Defendant Healthfield Holdings, Inc. ("HHI"), and Plaintiffs voluntarily accepted shares in Healthfield Holdings, Inc. in exchange for their previous interests in HFI.

Subsequently, in consideration for needed financing, HHI gave a security interest in all of HFI's assets, including its stock, to Finova Capital Corporation ("Finova").[1] After sending numerous notices of default, Finova commenced foreclosure proceedings against HHI in early 2001. Finova foreclosed on HHI's assets and held a public foreclosure auction on March 9, 2001. Defendants Four Seasons Healthcare, Inc. ("FSHI"), and Four Seasons Healthcare, LLC ("FSHLLC") (collectively, "Four Seasons"), which are owned by Defendant Windley, purchased HHI's assets at the auction.

Alleging various acts of malfeasance by Windley in connection with his pre-foreclosure dealings with Finova and HHI, Plaintiffs initiated this action asserting claims arising under federal securities laws, as well as pursuant to state statute, common law and equitable doctrine. Defendants counterclaimed, contending that Plaintiffs had engaged in tortious interference through their filing of the instant lawsuit.

By Order dated July 27, 2004, the Court granted Defendants summary judgment on several of Plaintiffs' claims and dismissed Defendants' counterclaim for tortious interference, leaving for further resolution only certain aspects of Plaintiffs' federal securities, fraud, and unjust enrichment claims, as well as their request for declaratory judgment. Moreover, the Court observed that the continued viability of Plaintiffs' federal securities claims hinged on the applicability of the "forced seller doctrine" to the instant controversy, and noted that the remaining evidentiary issues surrounding that application were narrow. In particular, the Court observed that applicable precedent would foreclose Plaintiffs' reliance on the forced seller doctrine, and thus their success on Count I of their Complaint, if the evidence demonstrated that, while HHI's assets had been subject to foreclosure, the corporation itself remained in existence following the foreclosure sale. The parties presented new authorities and evidentiary materials to the Court addressing this discrete issue at a November 23, 2004 hearing, and with those authorities and evidence as a foundation, the Court turns once again to exam-

---

1. Finova is not a party in this case.

ine whether summary judgment is appropriate as to Plaintiffs' federal securities cause of action.

## Discussion

### I. Procedural Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Application of Forced Seller Doctrine

■ To have standing to bring a private securities claim under § 10(b) or Rule 10b–5, one must be a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *see Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405, 408 (5th Cir.1993) (plaintiff who lacked standing for direct action under § 10(b) also lacked standing for § 20(a) controlling person claim). In the instant case, Plaintiffs concede that they did not actually acquire or sell shares in HHI in connection with Defendants' alleged malfeasance, but rather attempt to invoke the "forced seller doc-

trine" to demonstrate their satisfaction of this threshold standing requirement.

■ As the Court first explained in its July 27, 2004 Order, case law applying the forced seller doctrine establishes three evidentiary hurdles a securities plaintiff must overcome prior to successful invocation of the doctrine: (1) a drastic reduction in the value of the plaintiff's investment; (2) a causal relationship between the alleged fraud and the altered nature of the plaintiff's investment; and (3) an elimination of the prior business entity as a result of the complained-of business transactions. Richard B. Gallagher, Who is "Forced Seller" for Purposes of Maintenance of Civil Action Under § 10(b) of Securities Exchange Act of 1934, 59 A.L.R.Fed. 10; *see Dudley v. S.E. Factor & Fin. Corp.*, 446 F.2d 303, 307 (5th Cir.1971) (stating general principles). In that same Order, the Court concluded that, while there was sufficient evidence from which a jury could find the first two elements satisfied, the "elimination" of the prior business entity (*i.e.*, HHI) remained unclear from the record before it, precluding the entry of summary judgment on that issue.

■ The parties have now come forward with evidence and supplemental legal authorities addressing the application of the forced seller doctrine, and the Court finds that any preexisting genuine issue of material fact regarding Plaintiffs' ability to rely on the same have been eliminated. Succinctly stated, because following the foreclosure sale, Plaintiffs remained shareholders in an ongoing enterprise, albeit one that had "ceased its active existence[,]" the forced seller doctrine is not a viable avenue for Plaintiffs to demonstrate standing under § 10(b) or Rule 10b–5. *See Arnesen v. Shawmut County Bank, N.A.*, 504 F.Supp. 1077, 1081 (D.Mass.1980). Defendants are entitled to summary judgment

with respect to Count I of Plaintiff's Complaint.

As Defendants emphasize in their papers, Plaintiffs admitted in discovery that they *remain* stockholders in HHI. (*See* Defs.' List of Docs. Demonstrating Healthfield Holdings, Inc. Continues to Exist at Exs. 4, 7, 9.) Moreover, there is evidence before the Court that HHI continued to operate as a legal actor even after the March 9, 2001 foreclosure sale, including, *e.g.*, through certain contractual undertakings executed subsequent to the sale of its assets to Four Seasons. (*Id.* at Ex. 10.) It is self evident that an investor cannot hold a security interest in an entirely nonexistent entity, nor can such an entity continue to participate in legal transactions. The third prerequisite to invocation of the forced seller doctrine, therefore, remains unsatisfied—HHI was not "eliminated" by virtue of the March 9, 2001 foreclosure sale.

Nor does the evidence proffered by Plaintiffs engender a genuine issue of fact with respect to HHI's continued existence. As an initial matter, evidence tending to show that the acquisition of HFI's stock by Four Seasons left HHI with no remaining valuable assets does not speak directly to the question of whether HHI, as a corporate entity, had been "eliminated" by the foreclosure sale. Rather, such evidence bears its primary relevance to prong one of the forced seller inquiry; namely, whether there has been a drastic reduction in the value of the plaintiff's investment. To treat a severe diminution of investment value as tantamount to the elimination of the corporate enterprise would improvidently conflate the first and third elements of the forced seller inquiry, and the Court declines to do so here.

Likewise, Plaintiffs' reliance on the Delaware Secretary of State's designation of the corporation as "void" to support the cessation of HHI's existence following the March 9, 2001 foreclosure sale is misplaced. According to the record before the Court, that status was imposed solely in connection with HHI's failure to pay taxes as required by Delaware law, and took effect March 1, 2001–eight days *prior* to the foreclosure sale. (Aff. of Collette Adams on Docs. for Pretrial Conference at Ex. 8.) A designation imposed by the Delaware Secretary of State in connection with tax delinquencies factually divorced from the foreclosure sale at issue is simply not probative as to prong three of the forced seller doctrine inquiry-*i.e.*, elimination of the prior business entity *as a result of* the complained-of business transactions.

Indeed, the thrust of Plaintiffs' opposition to summary judgment is not predicated on evidence ostensibly contradicting HHI's continued existence following the foreclosure sale. Rather, their principal objection appears to be that the standard articulated by the Court in its July 27, 2004 Order does not accurately reflect the law of this Circuit, or, more precisely, the law of the Fifth Circuit as of September 30, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (the U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981).[2]

In its July 27, 2004 Order, the Court relied heavily on *Dudley v. Southeastern Factor & Finance Corp.,* 446 F.2d 303 (5th Cir.1971), and *Arnesen v. Shawmut County Bank, N.A.,* 504 F.Supp. 1077 (D.Mass.

---

**2.** The Eleventh Circuit itself has not addressed the application of the forced seller doctrine. Consequently, this Court is forced to rely on Fifth Circuit authorities predating the creation of the Eleventh Circuit for binding appellate precedent regarding the doctrine's application.

1980), to construe the contours of the forced seller doctrine under § 10(b) or Rule 10b–5. In *Dudley,* the Fifth Circuit illuminated the principles underlying the doctrine, and held that "a shareholder should be treated as a seller when the nature of his investment has been fundamentally changed from an interest in a going enterprise *into a right solely to a payment of money for his shares.*" 446 F.2d at 307 (emphasis supplied). The court in *Arnesen,* moreover, applied this principle in light of the Supreme Court's stated inclination to limit the proliferation of lawsuits under § 10(b) in *Blue Chip Stamps v. Manor Drug Co.,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), as well as numerous Fifth Circuit authorities applying the forced seller doctrine, to hold that while a shareholder in a *liquidated* corporation may properly claim to be a forced seller for purposes of federal securities law, the same was not true for a stockholder in a corporation whose assets have merely been subject to foreclosure. 504 F.Supp. at 1081–82. Consequently, the *Arnesen* court concluded that the plaintiffs before it, who, following the foreclosure of the subject corporation's assets, "were left with stock of little value in an ongoing corporate entity that had ceased its active existence but had not been liquidated[,]" could not avail themselves of the doctrine to satisfy the purchaser/seller requirement of § 10(b) and Rule 10b–5. *Id.*

In its July 27, 2004 Order, this Court concluded that if evidence were to demonstrate that HHI had continued to exist as a legal entity following the March 9, 2001 sale of its assets to Four Seasons, then, under *Dudley* and *Arnesen,* Plaintiffs would be precluded from invoking the forced seller doctrine, and their securities claims would necessarily fail. Plaintiffs, now encountering record evidence of HHI's continued viability following the foreclosure sale, invite the Court to adopt a more amorphous approach to application of the forced seller doctrine, insisting that the proper "test" is simply whether a plaintiff's interest in a subject corporation has been "fundamentally altered" as a result of the complained-of transaction. They cite a 1994 Fifth Circuit decision, *7547 Corp. v. Parker & Parsley Development Partners, L.P.,* 38 F.3d 211 (5th Cir. 1994), for support, claiming that the Fifth Circuit therein indicated that, around the time of the Eleventh Circuit's creation, it had replaced the rigid test expressed in *Dudley* with this more flexible standard. The Court declines Plaintiffs' invitation for two reasons.

First, the Court perceives Plaintiffs' request for a much broader application of the forced seller inquiry to be in tension with the Supreme Court's mandate that the purchaser/seller requirement of § 10(b) and Rule 10b–5, despite its arguably arbitrary exclusion of certain otherwise "deserving" plaintiffs, not be unduly expanded through judicial interpretation. *See, e.g., Blue Chip Stamps,* 421 U.S. at 737–55, 95 S.Ct. 1917. Indeed, if Congress had intended "fundamental alteration" in the nature of a shareholder's investment to be the touchstone of § 10(b) standing, it could easily have stated as much in the text of the statute. It did not. Rather, it restricted the scope of potential plaintiffs to those shareholders who had purchased or sold their shares as a result of the defendant's alleged malfeasance. While the forced seller doctrine recognizes that this standing threshold may be satisfied through the *exchange* of securities, as well as through a "fundamental alteration" in the nature of the shareholder's investment from an interest in a going enterprise into a right *solely* to a payment of money for shares, the Court does not construe the doctrine to altogether supplant the purchaser/seller requirement with a test that focuses instead on whether any "fundamental alteration" has taken place *vis-a-*

*vis* the character of the shareholder's investment.

Second, notwithstanding Plaintiffs' suggestion to the contrary, *7547 Corp.* simply cannot be read to replace the test articulated by the Fifth Circuit in *Dudley* with the more amorphous "fundamental alteration" standard proposed by Plaintiffs, at least in the context of foreclosure of corporate assets.

Plainly, the Fifth Circuit in *7547 Corp.* did indicate that its interpretation of the forced seller doctrine had expanded in decisions handed down after *Dudley.* Its acknowledgment of this expansion, however, simultaneously underscored the limited context in which the expansion had taken place:

> The forced seller doctrine was at first quite narrowly interpreted by this court, recognizing the standing of such an investor only when "the nature of his investment has been fundamentally changed from an interest in a going enterprise into a right solely to a payment of money for his shares." *Dudley v. Southeastern Factor and Finance Corp.,* 446 F.2d 303, 307 (5th Cir.[1971]) . . . . However, the concept has evolved—*at least in the context of merger and acquisition transactions involving involuntary exchanges of securities*—in order to keep in step with the realities of the corporate and securities world, and a subsequent line of cases in this circuit has applied the more flexible "fundamental change in investment" test to *coerced exchanges* significantly altering the nature of the investment.

38 F.3d at 226 (emphases supplied); *see also id.* ("The federal courts have created an exception to the [strict purchaser/seller] rule when an investor's interest in a company is fundamentally altered through a *merger, acquisition or liquidation.*") (emphasis supplied). It expressly contrasted this broader application of the doctrine in the area of coerced exchange with the "most restrictive sense" of the forced seller concept that it had continued to apply in situations, such as that presented here, involving mere "claims of dilution or decrease in the value of a same or similar investment which the plaintiff continues to hold after the complained of transaction . . . ." *Id.* at 227 n. 18. Stated differently, while *7547 Corp.* may have acknowledged the adoption of a "fundamental change" approach in the limited context of involuntary *exchanges* of securities, it did not disclaim, and indeed emphasized, the continued viability of the *Dudley* standard in cases where the proposed plaintiff continues to hold the relevant shares following the subject transaction. Because, in the instant case, Plaintiffs' continued ownership of shares in HHI following the foreclosure sale is incontrovertible, and because, unlike in the context of liquidation, their investment was not transformed into a right solely to a payment of money for their shares, the forced seller doctrine is not an available substitute for literal compliance with § 10(b) and Rule 10b–5's purchaser/seller requirement. Summary judgment is accordingly **GRANTED** to Defendants in connection with Count I of Plaintiff's Complaint.

### Conclusion

The Court hereby **GRANTS** Defendants summary judgment in connection with Count I of Plaintiffs' Complaint.